**Zdenka CHNAPKOVA, also known as Denis Chnoupek, Plaintiff–Appellee,**

v.

**Kong S. KOH, M.D., Defendant–Appellant.**

United States Court of Appeals, Second Circuit.

**No. 314, Docket 92–7492.**

Argued Nov. 2, 1992.

Decided Feb. 3, 1993.

Raymond W. Belair, New York City (Belair & Evans, New York City, of counsel), for defendant-appellant.

Spencer H. Herman, Brooklyn, NY (Hoberman & Sussman, P.C., Brooklyn, NY, of counsel), for plaintiff-appellee.

Before VAN GRAAFEILAND and McLAUGHLIN, Circuit Judges, and POLLACK, District Judge.*

McLAUGHLIN, Circuit Judge:

Kong S. Koh, M.D., a plastic surgeon, appeals from a final judgment of the Unit-

---

* Honorable Milton Pollack of the United States District Court for the Southern District of New York, sitting by designation.

ed States District Court for the Southern District of New York (Charles M. Metzner, *Judge*), after a jury trial, awarding $150,000 in damages to plaintiff, a former patient. Dr. Koh alleges that several erroneous evidentiary rulings made during the trial led to the verdict. We hold that two such rulings were prejudicially erroneous and remand for a new trial.

## BACKGROUND

In August, 1988, Zdenka Chnapkova, a 25 year-old model and aspiring actress who had immigrated to the United States from Czechoslovakia, sued Dr. Koh for malpractice in New York State Supreme Court, alleging that a December 31, 1985 facelift he had performed caused unsightly scarring. Dr. Koh removed the case to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1441(a) and the case was tried before a jury from March 31–April 3, 1992.

Chnapkova proceeded on theories of negligence and lack of informed consent. She testified that when the bandages were removed two weeks after surgery, there were square-shaped scars on the sides of her cheeks, in front of her ears, and across her forehead. This disfigurement plunged her into deep depression. She also stated that, while she later had two cosmetic surgeries for her nose and lips and also underwent a hair transplant procedure, no other doctor had performed surgery in the area of her scars after Dr. Koh performed the facelift.

While the severity of Chnapkova's scarring was not greatly disputed at trial, the extent of the surgical procedure performed by Dr. Koh was. Dr. Koh testified that his medical records indicated that he had performed a limited procedure called a temporal rhytidectomy, with an incision about two inches long, restricted to the temple area. Chnapkova testified that Dr. Koh's

incision went from the top of her forehead all the way to the bottom of her ear.

Dr. Koh's defense was clear and simple: Ms. Chnapkova must have gone to another surgeon for further surgery sometime after Koh performed his relatively simple facelift. To illustrate her predilection for cosmetic surgery, Dr. Koh pointed to her testimony regarding at least four separate cosmetic operations on her face before Dr. Koh's facelift. On direct testimony, Chnapkova admitted to undergoing an eyelid surgery in Bratislava, Czechoslovakia in 1980, and a nose job in New York at the beginning of 1985. On cross-examination, she added that she also had a nose job in Bratislava, and yet another nose job in London in 1983 or 1984. None of these surgeries, however, affected the scarred area.

Ms. Chnapkova's surgical history was hard to reconstruct because she paid for all her medical treatment in cash, so no insurance records existed to identify other physicians who treated her. Additionally, although she claimed that she noticed the scarring the same day that the bandages were removed in January 1986, the only photographs she offered into evidence that showed the scarring were taken in June 1988, more than two years later.

*Evidentiary Rulings*

Although appellant raised a variety of alleged evidentiary errors by the district court, only two need be considered.

*Roosevelt Hospital Records*

On February 7, 1987 (more than a year after Dr. Koh's facelift), the plaintiff appeared at the Emergency Room of Roosevelt Hospital. She had a bandage on her nose, which, she told the emergency room nurse, covered an injury sustained in an attempted suicide leap from a second story window. She also exhibited other signs of emotional and psychological disturbance, and was admitted to the hospital for 15 days as a psychiatric patient.[1] During

---

1. In her psychiatric admission note, the Roosevelt staff doctor who treated her noted that she laughed and cried to herself, and that she claimed that her voice had been surreptitiously taped and played on the radio. She also told him that people were laughing at her. Other treatment notes from her hospital stay reflect her continuing conviction of persecution: she told the emergency room physician that "people [were] laughing at her and talking about her;"

her stay at Roosevelt, the only abnormalities noted by any of the three physicians who performed physical examinations of her face related to her nose. She never mentioned any facial scarring or Dr. Koh.

The Roosevelt psychiatrists treating her found her to be both paranoid and delusional. The discharge diagnosis was paranoid schizophrenia. The subsequent out-patient records from the hospital, containing entries until February 1989, also described her as delusional.

Before trial, Chnapkova filed a motion *in limine* to exclude the Roosevelt records on the grounds, *inter alia*, that any probative value they might have was greatly outweighed by the danger of "unfair prejudice." The district court agreed, and excluded the records, all testimony relating to them, and all statements by counsel about them.

*Failure to File Income Tax Returns*

In the same pretrial motion *in limine*, Chnapkova also asked the district court to exclude testimony that she had not filed any income tax returns since her arrival in the United States in 1984. Judge Metzner concluded that such evidence would be irrelevant and therefore excluded it.

Following the jury verdict awarding the plaintiff $150,000, Koh moved for a new trial, arguing, *inter alia*, that the evidentiary rulings discussed above constituted reversible error. Judge Metzner denied the motion in a six-page order, and Koh now appeals.

## DISCUSSION

*The Hospital Records*

█ Fed.R.Evid. 403 provides that relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." A district court's rulings under Rule 403 will be overturned only when there is an abuse of the district court's discretion. *George v. Celotex Corp.*, 914 F.2d 26, 28 (2d Cir.1990); *McNeilab, Inc. v. American Home Products Corp.*, 848 F.2d 34, 38 (2d Cir.1988).

█ Here, defendant offered the Roosevelt Hospital records for two distinct purposes. The first was to impeach her credibility by showing that the plaintiff had a history of psychiatric problems. A clinical history of mental illness is probative of the credibility of the witness. *Cf. United States v. Butt*, 955 F.2d 77, 82 (1st Cir. 1992) (noting in a criminal case, that "[e]vidence about a [government witness's] prior condition of mental instability that provides some significant help to the jury in its efforts to evaluate the witness's ability to perceive or recall events or to testify accurately is relevant." (citation omitted) ). *See generally United States v. Lindstrom*, 698 F.2d 1154, 1160–61 (11th Cir.1983) (describing the ways in which psychiatric history can be used to impeach a witness, and noting that "[a] paranoid schizophrenic, though he may appear normal and his judgment on matters outside his delusional system may remain intact, may harbor delusions of grandeur or persecution that grossly distort his reaction to events."). Henry Weihofen, *Testimonial Competence and Credibility*, 34 Geo.Wash.L.Rev. 53, 82 (1965).

In its order denying the new trial motion, the district court acknowledged that this was a "close question," but concluded that the evidence of psychiatric treatment was unfairly prejudicial because "the treatment [was] remote in time from both the date of the trial and the events being testified about." (citing *United States v. Bari*, 750 F.2d 1169, 1179 (2d Cir.1984), *cert. denied*, 472 U.S. 1019, 105 S.Ct. 3482, 87 L.Ed.2d 617 (1985) and *United States v. Glover*, 588 F.2d 876, 878 (2d Cir.1978). We disagree.

The district court's reliance on the *Bari* and *Glover* cases to support the conclusion that the treatment here was too remote was ill-advised. In both those cases, the time lapse between the psychiatric treat-

---

she told the hospital social worker assigned to her that people were talking about "her on the T.V. & radio," and that "people (movie stars) [were] jealous of her."

ment and the trial testimony was much greater than the five years here. *See Bari*, 750 F.2d at 1179 (over ten years between treatment and trial); *Glover*, 588 F.2d at 878 (twelve years). Additionally, in both *Glover* and *Bari*, there was a wealth of other evidence to impeach the witness whose psychiatric history was at issue. *See Bari*, 750 F.2d at 1179; *Glover*, 588 F.2d at 878. Here, by contrast, the evidence permitted to impeach the plaintiff was narrowly circumscribed, with not only her hospital records, but evidence of her failure to file tax returns also being excluded.

Apart from their impeachment value, there is yet another—and arguably more important—reason why the hospital records should have been admitted: to support the defense theory that Chnapkova's scarring was the result of surgery performed by someone other than Dr. Koh. The evidence would have shown that the plaintiff never discussed her facial scarring with any of the Roosevelt physicians who treated her, nor did any of the three physicians who gave her physical examinations indicate in their records that they had observed any scarring. The jury could have inferred from this that the facial scarring occurred sometime after Chnapkova's 1987 stay at Roosevelt Hospital.

The district court deprecated this evidence with the observation that "[t]he failure of the hospital record to show the existence of these scars is not unusual in a case involving psychiatric problems." This conclusion fails to consider that when the plaintiff arrived at the emergency room, her face was already bandaged and she was suffering from an obvious nose injury. The hospital records of her physical condition all refer to her nose, thus indicating that facial examinations were conducted. Under these circumstances, the absence of any mention of facial scarring in the records, while not dispositive, was certainly probative that no such scarring existed at the time of her hospitalization—more than one year after Dr. Koh had operated on her.

Because the Roosevelt Hospital records bore on the plaintiff's credibility as a witness, and, more specifically, on the issue of whether the surgery that Dr. Koh performed led to her facial scarring, any prejudicial effect that admission of the evidence might have had was minor by comparison, and the decision to exclude them constituted an abuse of discretion.

### The Failure to File Tax Returns

■ From her arrival in the United States in 1984 up to the time of trial in 1992, the plaintiff never filed income tax returns. The district court, nevertheless, concluded that such evidence was "inappropriate in a negligence trial having nothing to do with plaintiff's reliability in dealing with tax or financial matters," and was also irrelevant because the "plaintiff [was] not making any claim for loss of earnings." We reject both conclusions.

Fed.R.Evid. 611(b) provides, in pertinent part, that "[c]ross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness." Fed.R.Evid. 608(b) implements this by providing that specific instances of misconduct "may ... in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness...." Evidence that a witness has made false statements in a tax return is obviously a matter which affects the witness's credibility. *See, e.g., United States v. Sullivan*, 803 F.2d 87, 90–91 (3d Cir.1986), *cert. denied*, 479 U.S. 1036, 107 S.Ct. 889, 93 L.Ed.2d 841 (1987); *United States v. Zandi*, 769 F.2d 229, 236 (4th Cir.1985); *see also United States v. Singer*, 241 F.2d 717, 717 (2d Cir.1957) (holding, before the advent of the Federal Rules of Evidence, that the "use [of a tax return], for the purpose of impeachment, was proper."). The total failure to file tax returns for a period of eight years should be similarly admissible on the issue of her truthfulness, subject to the discretionary considerations in Rules 403 and 608(b).

Because the plaintiff's credibility in this unusual case was of such crucial importance, and because her failure to file tax returns bore directly on her credibility, the district court's decision to exclude testimony regarding that failure was an abuse of discretion.

## CONCLUSION

Reversed and remanded.