**Richard HODGES, Plaintiff,**

v.

**John P. KEANE and K. Goewey, Defendants.**

**Richard HODGES, Plaintiff,**

v.

**James E. SULLIVAN, Supt.; Lt. K. Goewey; Sgt. G. Roberts; C.O. R. Martinez; and Ronald F. Cote, Defendants.**

Nos. 89 Civ. 1805 (SS), 88 Civ. 2279 (SS).

United States District Court, S.D. New York.

April 11, 1995.

Kramer, Levin, Nessen, Kamin & Frankel, New York City, for plaintiff (Nicole Toran, of counsel).

Dennis Vacco, Atty. Gen. of the State of N.Y., New York City, for defendants (Barbara P. Demchuk, of counsel).

## MEMORANDUM OPINION AND ORDER

SOTOMAYOR, District Judge.

Before me is a motion *in limine* by plaintiff Richard Hodges ("Hodges"), requesting that I exclude from evidence at trial his past mental health records and expert testimony by psychiatrist Dr. Richard Ciccone. Defendants seek to introduce this evidence to impeach Hodges' credibility. The mental health records proffered by defendants are comprised of over 600 pages of reports issued by various mental health professionals during plaintiff's incarceration. The expert testimony is based on Dr. Ciccone's review of these records and his examination of the plaintiff. For the reasons discussed below, plaintiff's motion is conditionally granted.

## BACKGROUND

Hodges was an inmate in the Sing Sing correctional facility, Ossining, New York ("Sing Sing") at all relevant times. Plaintiff brought these actions pursuant to 42 U.S.C. § 1983 against defendants, correctional personnel at Sing Sing.[1] Hodges alleges that defendants engaged in a systematic pattern of harassment, intimidation and retaliation

---

1. Plaintiff commenced the action titled *Hodges v. Sullivan* in 1988. In 1989, plaintiff commenced the second action, *Hodges v. Keane*. Plaintiff joined the claims of both cases into a single Complaint and served the consolidated Complaint on defendants on November 1, 1991.

against him for his vigorous and sometimes successful challenges to unlawful prison procedures and to violations of his and other prisoners' civil rights.

According to Hodges, in the period from 1987 to 1990, defendants subjected him to disciplinary proceedings and solitary confinement for various baseless charges which either were dismissed or annulled in subsequent hearings or court proceedings. For example, Hodges was disciplined and held in a Special Housing Unit ("SHU") from November 1987 until May 1988 after a Tier III hearing on charges of sexual assault brought by another inmate, a finding later annulled by the Supreme Court of New York State, Westchester County.[2] Hodges further alleges that despite the Supreme Court's ruling, defendants kept him in solitary confinement and "keeplock" status and repeatedly subjected him to various forms of disciplinary and administrative segregation for other groundless charges, including dousing correction officers with water and coffee. Hodges also asserts that correction officers tampered repeatedly with his legal mail.

Defendants contest all of plaintiff's assertions. They maintain that Hodges has a long history of paranoid schizophrenia which has affected his perception of the events underlying his Complaint and which will affect his testimony at trial. Defendants also raise various affirmative defenses including qualified immunity.

Defendants previously moved, pursuant to Fed.R.Civ.P. 35(a), for an order directing a medical examination of the plaintiff. By Order dated February 3, 1994, I granted the motion, finding that sufficient cause existed to place plaintiff's mental condition in controversy. However, I expressly reserved judgment as to whether Hodges' medical reports and the results of the Rule 35(a) examination would be admissible at trial.

As a result of my Order, plaintiff was examined by defendants' forensic psychiatrist expert, Dr. Richard Ciccone on June 10 and 11, 1993. Dr. Ciccone also reviewed over 600 pages of mental health records.

Defendants have now indicated their intent at trial to introduce Dr. Ciccone's expert testimony and plaintiff's mental health records to establish that plaintiff suffers from a chronic, persistent mental condition, called Anti–Social Personality Disorder, which they claim existed in the past at the times relevant to Hodges' claims, and is present today. Defendants assert that plaintiff's condition is likely to cause him to mislead the jury about the events giving rise to his Complaint. According to the defendants, testimony by an expert will assist the jury in assessing the effect of plaintiff's mental condition on his ability to perceive and accurately remember the events in question, and in evaluating whether defendants behaved in a retaliatory fashion as Hodges claims.

Dr. Ciccone examined plaintiff for about five hours. He also reviewed over 600 pages of prison mental health records which detailed plaintiff's psychiatric hospitalization and treatment from approximately 1976 to 1982. Based on his examination of plaintiff and review of the records, Dr. Ciccone found plaintiff to meet the criteria for the diagnoses of Polysubstance Abuse and Antisocial Personality Disorder. (Toran Aff.Ex. G). Dr. Ciccone, however, found insufficient evidence of psychiatric trauma to plaintiff from his alleged mistreatment while in prison. While Dr. Ciccone stated that he is "unable to provide an opinion whether Mr. Hodges will be truthful while testifying," he noted that "[plaintiff's] record indicates that he has lied about himself and fabricated psychiatric symptoms." *Id.*

The records which Dr. Ciccone reviewed and which defendants seek to introduce at trial are comprised of reports issued by at least two dozen mental health professionals, including psychiatrists, psychiatric social workers, psychologists, nurses and parole officers. *See generally* Defendants' Memorandum of Law in Anticipation of Plaintiff's Motion *In Limine* at 3–14 [hereinafter Defs.' Mem.]. Not all of the reports were issued for the purpose of treating plaintiff. Some were issued to the Parole Board for the purpose of evaluating plaintiff for release. The reports, spanning approximately the pe-

---

**2.** *Hodges v. Sullivan,* No. 393–88 (N.Y.Sup. West-       chester Co. May 4, 1988).

riod from 1975 to 1987, the year when the events giving rise to Hodges' Complaints began to occur, embrace many different diagnoses. They include "anti-social personality with malingering features," "schizophrenia, paranoid type," (Defs.' Mem. at 5), "sociopathic personality disturbance, dyssocial type," (Defs.' Mem. at 6), and "skillful manipulator who has learned to manipulate the ins and outs of the mental health system to get away from the pressures and demands of the correctional system" (Defs.' Mem. at 10).

The last time plaintiff was diagnosed, however, as having paranoid delusions was in early 1982 when plaintiff was briefly readmitted to Central New York Psychiatric Center ("CNYPC"). At CNYPC, a psychiatrist observed plaintiff "as openly hostile, negativistic and responding to paranoid delusions." (Defs.' Mem. at 10–11). Staff at CNYPC, however, also noted that "plaintiff presented no problem and that he was an extremely manipulative individual who used his psychotic behavior at the correctional facility to be sent to CNYPC." (Defs.' Mem. at 11). Subsequent to plaintiff's release from CNYPC in February 1982, a report rendered by the Mental Health Bureau of Forensic Services in October 1982 indicated that plaintiff's paranoid schizophrenia was in remission (Defs.' Mem. at 12). A 1986 report by the Unit Coordinator in Mental Hygiene commented that plaintiff had not shown any symptoms of major mental illness since 1978. (Defs.' Mem. at 14).

Plaintiff makes this motion *in limine* to exclude from evidence his psychiatric records and Dr. Ciccone's testimony.[3]

### DISCUSSION

The introduction of psychiatric expert testimony to impeach the credibility of a witness has a long history. *See, e.g., United States v. Hiss,* 88 F.Supp. 559, 559 (S.D.N.Y.1950) (evidence of insanity relevant not only to the preliminary question of competency but also to the jury question of credibility); *United States v. Partin,* 493 F.2d 750, 762 (5th Cir. 1974) ("jury should, within reason, be in-

formed of all matters affecting a witness's credibility to aid in their determination of the truth"), *cert. denied,* 434 U.S. 903, 98 S.Ct. 298, 54 L.Ed.2d 189 (1977).

However, a trial court has broad discretion with respect to the admission of expert testimony. *United States v. McBride,* 786 F.2d 45, 49 (2d Cir.1986) (citing *Hamling v. United States,* 418 U.S. 87, 108, 94 S.Ct. 2887, 2902, 41 L.Ed.2d 590 (1974)). The admissibility of psychiatric testimony for the purpose of impeachment is subject to several overlapping requirements under the Federal Rules of Evidence. *Id.* The evidence must be relevant, as required by Federal Rules of Evidence 401 and 402. Rule 608(a) permits a party to attack or support the credibility of a witness by evidence in the form of opinion, provided the evidence is limited to the truthfulness of the character. Rule 702 also allows expert testimony in the form of an opinion provided it is based on specialized knowledge which "assist[s] the trier of fact to understand the evidence or to determine a fact in issue." *But cf. United States v. Scop,* 846 F.2d 135, 142 (2d Cir.1988) (expert may only testify to relevant physical or medical conditions but may not opine as to another witness's credibility). Finally, even if the court concludes that evidence is relevant, it can exclude such evidence if its probative value is substantially outweighed by its prejudicial effect, or if the evidence confuses the issues or creates needless delay or waste of judicial resources. Fed.R.Evid. 403.

Before considering potential prejudice, relevance must be established. *See, e.g., United States v. Torniero,* 735 F.2d 725, 730 (2d Cir.1984), *cert. denied,* 469 U.S. 1110, 105 S.Ct. 788, 83 L.Ed.2d 782 (1985). Courts in this circuit have excluded evidence of past mental illness as not helpful to the factfinder when the illness is remote in time from both the date of the trial and the events forming the basis of the case. Thus, in *Davidson v. Smith,* 9 F.3d 4, 7 (2d Cir.1993), the Second Circuit held that testimony concerning a § 1983 plaintiff's confinement at an institution for the criminally insane more than 15

---

**3.** Plaintiff also opposes introduction of Dr. Ciccone's expert report at trial. However, defendants have made clear that they do not seek to

introduce Dr. Ciccone's report into evidence. *See* Reply Aff. ¶ 6.

years prior to trial should have been excluded as unfairly prejudicing the jury. *See also United States v. Bari,* 750 F.2d 1169, 1179 (2d Cir.1984) (witness's hospitalization for schizophrenia more than ten years before the trial was of marginal relevance and cross-examination of witness on his illness would have been a confusing digression), *cert. denied sub nom. Benfield v. United States,* 472 U.S. 1019, 105 S.Ct. 3482, 87 L.Ed.2d 617 (1985); *United States v. Glover,* 588 F.2d 876, 878 (2d Cir.1978) (government witness's psychiatric treatment twelve years prior to trial found to be too remote).

■ In the instant case, I find plaintiff's past mental health condition similarly remote in time from the events giving rise to his Complaints and any future trial. Plaintiff's mental health records indicate that by late 1982 plaintiff was free of psychiatric symptoms. (*See, e.g.,* Toran Aff.Ex. G and Defs.' Mem. at 10–11). The events giving rise to plaintiff's § 1983 actions occurred five years later, in 1987.

*Chnapkova v. Koh,* 985 F.2d 79 (2d Cir. 1993), the Second Circuit case on which defendants rely for the proposition that "a clinical history of mental illness is probative of the credibility of the witness," is inapposite here. In *Chnapkova,* the Second Circuit remanded for a new trial, partly on the basis of the district court's refusal to admit evidence of plaintiff's psychiatric problems for which she had been hospitalized five years prior to the trial. The Court noted that the district court had erred in relying on *Bari,* 750 F.2d at 1179 and *Glover,* 588 F.2d at 878, in which evidence of psychiatric treatment occurring ten and twelve years, respectively, before trial was not admitted because the treatment was too remote. In *Chnapkova,* the psychiatric episode had occurred only five years before trial, and during a time relevant to the issues at trial. The Second Circuit reasoned, therefore, that the treatment was not remote. 985 F.2d at 81–82.

The trial in the instant case, if held in 1995, will occur 13 years after plaintiff's last psychiatric episode, reported in 1982. *See generally* Defs.' Mem. at 10–11. Five years had elapsed between plaintiff's last episode in 1982 and the beginning of the events giving rise to the Complaints in 1987. Moreover, plaintiff's mental health records are contradictory as to whether he suffered from delusions or simply manipulated delusional symptoms. In any event, defendants have not offered any evidence that plaintiff has suffered from delusions since 1982. I underscore that the last mental health record in 1986 concedes that plaintiff "ha[d] not shown any symptoms of major mental illness since 1978." Defs.' Mem. at 14, citing Report at 332–333. Defendants have not persuaded me that plaintiff's mental condition occurred with sufficient proximity to either the events in question or a future trial to render them relevant to plaintiff's current credibility.

Further, even if a nexus between Hodges' past mental health symptoms and his credibility could be established, Federal Rule of Evidence 403 allows me to balance the probative value of the psychiatric evidence proffered by defendants against its potential for prejudice, confusion of the jury, or waste of judicial resources. I find that the proffered mental health records and the expert testimony which is largely based on these records raise several of the risks enumerated by Rule 403.

■ Medical records, including psychiatric records, can be admissible under Federal Rule of Evidence 803(6), provided they are prepared in the regular course of business, near the time of occurrence, by a person with knowledge and are properly authenticated. *Romano v. Howarth,* 998 F.2d 101, 108 (2d Cir.1993). However, if the source of information or the method or circumstances of preparation indicate lack of trustworthiness, such records may be excluded. *Id.* Moreover, statements made to medical and mental health professionals and recorded for purposes of diagnosis and treatment are also admissible under Federal Rule of Evidence 803(4).

Here, it is not clear which portions of the voluminous records would be admissible under which hearsay exception. Defendants have not indicated which records were prepared to record plaintiff's mental health for purposes of diagnoses and treatment and which records were created for other pur-

poses. For example, plaintiff's mental health records include many reports issued to the Parole Board. These reports, while perhaps useful to the Parole Board, may not have been prepared by person with knowledge, "close to the time of occurrence," "in the regular course of business." In short, the trustworthiness of these records is substantially at issue.

█ Even if defendants could adequately demonstrate which portions of the records were admissible under an exception to the hearsay rule, they are unfairly prejudicial. " 'Unfair prejudice' ... means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed.R.Evid. 403 Advisory Committee's Note. The records are replete with negative characterizations of plaintiff ("plaintiff engaged in very skillful manipulative behavior, such as instigating other patients, organizing interest pressure groups, threatening legal actions against institution and the staff members,"[4] "acting out," "openly hostile," Defs.' Mem. at 9–10, "narcissistic, violent, unstable, sociopathic" and "jailwise and extremely manipulative and egotistical," Defs.' Mem. at 14–15). These descriptions of plaintiff's anti-social traits are unfairly prejudicial and of no assistance to a fact finder concerning his testimony today. Such characterization may go to plaintiff's propensity to engage in certain conduct but not necessarily to his credibility.

█ Finally, plaintiff's records are so voluminous and contain so many contradictory and inconsistent diagnoses by well over a dozen mental health experts that they would consume an inordinate amount of the court's and jury's time in sorting through and interpreting them, thereby making the creation of the records the main issue at trial at the expense of the underlying events which gave rise to this § 1983 Complaint. Because of their volume and scope, these records are likely to confuse the jury and represent a waste of judicial resources.

█ Turning to Dr. Ciccone's expert testimony, proffered by defendants, I find that the expert testimony's probative value is also substantially outweighed by the potential for unfair prejudice and confusion of the jury. Dr. Ciccone examined plaintiff for about five hours. (Ex. G to Toran Aff.) Dr. Ciccone's report does not indicate that he conducted any psychological testing of his own. Based on my reading of Dr. Ciccone's report, his opinion and diagnosis would largely rely on his review of plaintiff's mental records. In his conclusion, Dr. Ciccone merely notes that plaintiff's "record indicates that he has lied about himself and fabricated psychiatric symptoms, by his own admission." I do not place great probative value on an expert opinion which relies on highly prejudicial and suspect records.

After weighing the probative value of the evidence proffered by defendants against both its unfair prejudice and the burden on the factfinder, I conclude at this time that the expert testimony and plaintiff's mental health records should not be admitted at trial in defendants' direct case. However, I expressly reserve my right to alter this decision depending on plaintiff's case and his responses to questions on cross-examination. Obviously, plaintiff himself may open the door to my reconsideration of this decision.

### CONCLUSION

For the foregoing reasons, plaintiff's mental health records as well as the expert psychiatrist's testimony are conditionally excluded from testimony. Counsel are directed to attend a conference to set a trial date on May 4, 1995, at 2:00 p.m., 500 Pearl Street, New York, New York, Courtroom 14B. Counsel should bring with them available dates for themselves and witnesses during the summer.

**SO ORDERED.**

---

**4.** Defendants also assert that plaintiff has been engaged in forum shopping by commencing numerous law suits (Defs.' Mem. at 4, 13). However, the Second Circuit has made clear that a plaintiff's litigiousness is not relevant to his credibility and would be prejudicial. *Outley v. City of New York,* 837 F.2d 587, 592 (2d Cir.1988).