**Robert MISCHALSKI, Plaintiff,**

v.

**FORD MOTOR COMPANY, Discount Limousine Brokerage, Inc., and John Does 1–10, Defendants.**

**FORD MOTOR COMPANY, Third–Party Plaintiff,**

v.

**Piotr MIECZKOWSKI, Third–Party Defendant.**

No. 94 CV 3553 (RML).

United States District Court, E.D. New York.

July 25, 1996.

Dankner & Milstein, P.C. by Jay W. Dankner, Abram I. Bohrer, New York City, for Robert Mischalski.

Williams & Harris by Paul T. Williams, Jr., New York City, for Ford Motor Company.

## MEMORANDUM AND ORDER

LEVY, United States Magistrate Judge:

Defendant and Third–Party Plaintiff Ford Motor Company ("defendant" or "Ford") moves for leave to amend its answer to add a twelfth affirmative defense and for an order *in limine* permitting it to introduce evidence at trial of plaintiff Robert Mischalski's "alien status" and related "illegal conduct." For the reasons stated below, defendant's motion is denied in part and granted in part.

The proposed amended answer is attached as Exhibit A to Ford's motion papers; the purported new affirmative defense is as follows:

> Upon information and belief, at the time of the occurrence alleged in the complaint, plaintiff was an illegal alien or was then and there engaged in an illegal transaction or unlicensed employment.

> Upon information and belief, by reason of the foregoing, plaintiff is estopped from seeking damages herein or, alternatively, plaintiff is barred from seeking future compensatory damages of any nature and/or plaintiff's future compensatory damages should be calculated on the basis of the currency value of the country of his national origin.

As Ford necessarily concedes, a plaintiff's illegal alien status is not a bar to recovery in federal court. *See, e.g., Rios v. Enterprise Ass'n Steamfitters Local Union 638 of*

*U.A.,* 860 F.2d 1168, 1173 (2d Cir.1988) (Title VII applies to undocumented workers); *Local 512, Warehouse and Office Workers' Union v. National Labor Relations Bd.,* 795 F.2d 705, 718 (9th Cir.1986) (undocumented workers entitled to back pay for employers' violations of the Fair Labor Standards Act); *Torrez v. State Farm Mutual Automobile Ins. Co.,* 705 F.2d 1192, 1202–03 (10th Cir. 1982) (illegality not a defense to wrongful death claim by estate of illegal alien killed in auto accident); *Hagl v. Jacob Stern & Sons, Inc.,* 396 F.Supp. 779, 783–84 (E.D.Pa.1975) ("every alien, whether in this country legally or not, has a right to sue those who physically injure him"); *People of Saipan v. United States Dep't of Interior,* 356 F.Supp. 645, 652 (D.Haw.1973) (plaintiffs' status as nonresident aliens did not detract from their standing to sue under the National Environmental Policy Act). *See also Catalanotto v. Palazzolo,* 46 Misc.2d 381, 383–84, 259 N.Y.S.2d 473, 476 (Sup.Ct., N.Y.County 1965) ("There can be no doubt that an alien illegally present in the country has the right to sue in our courts"). Thus, plaintiff's illegal alien status is, by itself, irrelevant, and cannot be used to prevent plaintiff from recovering compensatory damages in this case. Accordingly, Ford may not assert plaintiff's status as a defense to this action.

■ However, Ford also contends that plaintiff suffered his alleged injury while engaged in the perpetration of an illegal act. Defendant apparently intends to adduce evidence at trial to establish that plaintiff was working illegally as an auto mechanic and was "engaged in an illegal transaction working off the books on his own time" when he was injured attempting to replace an air suspension in a 1990 Lincoln Town Car owned by third-party defendant Piotr Mieczkowski. According to Ford, plaintiff's employer had hydraulic lifts that were routinely used to conduct air suspension repairs.

However, since plaintiff allegedly was "working off the books" on his own time, he did not use the hydraulic lifts, but instead used the tire jack that caused his injury. Ford thus asserts that plaintiff's "illegal conduct" was a direct cause of the accident and seeks to introduce evidence of this "compounded illegality" in order to preclude any recovery of damages.

Ford's motion relies on the widely recognized principle that a person should not be permitted to take advantage of his or her own wrongdoing by predicating a legal or equitable claim on the person's own fraudulent, immoral or illegal conduct. This principle is most frequently asserted as a defense against the enforcement of illegal contracts (*see, e.g., Spivak v. Sachs,* 16 N.Y.2d 163, 211 N.E.2d 329, 263 N.Y.S.2d 953 (1965); *McConnell v. Commonwealth Pictures Corp.,* 7 N.Y.2d 465, 166 N.E.2d 494, 199 N.Y.S.2d 483 (1960)) [1] or against recovery of insurance proceeds made payable by the criminal act of a beneficiary (*see, e.g., Riggs v. Palmer,* 115 N.Y. 506, 22 N.E. 188 (1889); *Boatwright v. Hartford Ins. Group,* 64 A.D.2d 262, 409 N.Y.S.2d 860 (4th Dep't 1978)), but is also applicable to actions arising in tort, under the theory that one should not be rewarded for voluntary participation in an illegal act or profit from his or her own wrongdoing. *Barker v. Kallash,* 63 N.Y.2d 19, 468 N.E.2d 39, 479 N.Y.S.2d 201 (1984).

■ Under this theory, a plaintiff who has engaged in activities prohibited by law will not be permitted to recover damages if the plaintiff's conduct constituted a serious violation of the law and the injuries for which the plaintiff seeks recovery were the direct result of the plaintiff's knowing and voluntary participation in that violation. *Id.,* 63 N.Y.2d at 24, 468 N.E.2d at 41, 479 N.Y.S.2d at 203. For example, in *Barker v. Kallash,* the 14–year–old plaintiff was injured while attempt-

---

1. Ford argues that, "insofar as plaintiff had an agreement with the car owner to work on the car on plaintiff's own time, the public policy disfavoring illegal contracts also mandates that plaintiff must be precluded from any damage award in this case." However, plaintiff is not seeking to enforce any aspect of his agreement with the car owner. Accordingly, the general principle that illegal contracts are unenforceable does not apply here. Moreover, as discussed *infra,* defendant does not explain how plaintiff's agreement to work on Mr. Mieczkowski's car could have amounted to an illegal contract. It has not adduced evidence that plaintiff was compensated for working on Mr. Mieczkowski's car or that the agreement to work on the car was anything more than a favor for a friend.

ing to construct a pipe bomb using gunpowder extracted from a firecracker. The court dismissed plaintiff's tort action against the nine-year-old defendant who allegedly sold him the firecracker, citing "the public policy consideration that the courts should not lend assistance to one who seeks compensation under the law for injuries resulting from his own acts when they involve a substantial violation of the law." *Id.* 63 N.Y.2d at 29, 468 N.E.2d at 43, 479 N.Y.S.2d at 206. *See also Symone T. v. Lieber,* 205 A.D.2d 609, 613 N.Y.S.2d 404 (2d Dep't 1994) (plaintiff would be barred on public policy grounds from recovery in medical malpractice suit if she knowingly and willfully submitted to illegal abortion); *Phifer v. New York,* 204 A.D.2d 612, 612 N.Y.S.2d 225 (2d Dep't 1994) (dismissing wrongful death claim where claimant's decedent, while intoxicated, stole a state-owned vehicle and crashed it into a tree, sustaining fatal injuries); *Tillmon v. New York City Housing Auth.,* 203 A.D.2d 19, 609 N.Y.S.2d 239 (1st Dep't 1994) (defendant not liable for death of 14-year-old boy who was killed while "elevator surfing" by climbing through escape hatch and riding on roof of elevator car); *LaPage v. Smith,* 166 A.D.2d 831, 563 N.Y.S.2d 174 (3d Dep't 1990) (estate of decedent killed in auto accident while driving intoxicated at speeds in excess of 100 miles per hour barred from recovery).

The mere commission of an offense, however, does not bar a plaintiff from seeking redress for an injury suffered while engaging therein. Rather, an individual's legal violation precludes an action for injuries caused by a tortfeasor only when plaintiff's own criminal conduct was a "contributing proximate cause" of his or her injuries. *Id.,* 63 N.Y.2d at 30, 468 N.E.2d at 44, 479 N.Y.S.2d at 206–07 (Jasen, J., concurring). Indeed, it is well established under New York law that illegal acts will bar redress only when there is a causal nexus between plaintiff's injury and his or her own misconduct. *See Martin v. Herzog,* 228 N.Y. 164, 170, 126 N.E. 814, 816 (1920) (Cardozo, J.) ("A plaintiff who [unlawfully] travels without [lights on her vehicle] is not to forfeit the right to damages, unless the absence of lights is at least a contributing cause of the disaster").

Thus, plaintiffs have been permitted to bring causes of action despite their own misconduct, so long as the misconduct "was not of the kind that 'usually results in injury'" or was "'not per se ... dangerous.'" *Barker,* 63 N.Y.2d at 31, 468 N.E.2d at 45, 479 N.Y.S.2d at 207 (Jasen, J., concurring) (quoting *Platz v. City of Cohoes,* 89 N.Y. 219, 223 (42 Am.Rep. 286) (offense of traveling on Sunday for pleasure, while unlawful at the time, did not defeat recovery of traveler injured by defendant's negligence, since "[t]he act of travel is not one which usually results in injury"); and *Corbett v. Scott,* 243 N.Y. 66, 70, 152 N.E. 467 (1926) (minor injured while driving motorcycle, in violation of law prohibiting persons under 16 years of age from operating motorcycles, permitted to recover for defendant's negligent operation of automobile, since plaintiff's violation was "irrelevant to the result")).

As explained *supra,* Ford contends that by attempting to repair Mr. Mieczowski's car on his own time, instead of conducting the repair at his place of employment, plaintiff was engaging in an "illegal transaction" or "unlicensed employment" and, as a result, should be barred from recovering damages in this case. Ford's argument is inapposite for two reasons. First, Ford has adduced no evidence to support its contention that plaintiff's agreement with the car owner was in any way illegal. There is no evidence that plaintiff was compensated for working on Mr. Mieczowski's car or that the agreement constituted anything more than a favor for a friend.

Second, even assuming for the sake of argument that plaintiff was working "illegally off the books" at the time of the injury, the fact that plaintiff may have been working illegally, either because he was an illegal alien or because he was receiving money off the books and thus was not paying taxes on that income, did not cause the work to be dangerous and was not a proximate or contributing cause of plaintiff's injuries. Plaintiff may well have been contributorily negligent by using the tire jack rather than his employer's hydraulic lift. That is an issue of fact for the jury to decide, and certainly

defendant should be permitted to introduce evidence that plaintiff contributed to his own injury by using the tire jack to repair the vehicle instead of having Mr. Miecskowski bring his car into plaintiff's employer's garage or completing the repair in some other way.[2] Whatever the cause of plaintiff's injury, however, it was not caused by the fact that plaintiff may have been working "illegally," since working illegally is not, by itself, misconduct of the kind that usually results in injury or is per se dangerous.

 As Ford points out, evidence that a plaintiff was working illegally is admissible where it is relevant to the issue of lost wages and future earnings. *See Collins v. New York City Health and Hosps. Corp.,* 201 A.D.2d 447, 448, 607 N.Y.S.2d 387, 387 (2d Dep't 1994) (wages illegal alien decedent might have earned before dying, allegedly due to defendants' negligence and medical malpractice, as well as length of time he might have continued earning wages and the likelihood of his potential deportation, were fact questions for the jury); *Public Adm'r of Bronx County v. Equitable Life Assurance Soc'y of the United States,* 192 A.D.2d 325, 325, 595 N.Y.S.2d 478, 479 (1st Dep't 1993) (plaintiff "should be permitted to offer any evidence of any wages that his decedent, an alien working in the United States on an apparently illegal basis, might have earned.... It is for the jury to weigh defense proof that decedent would have earned those wages, if at all, by illegal activity"). However, plaintiff has stated that he will not seek damages for lost wages or future earnings in this case. Accordingly, evidence that plaintiff was working illegally is irrelevant to the issue of damages in the instant action.

For these reasons, defendant's motion to amend its answer as proposed above is denied. Plaintiff's illegal alien status and alleged "illegal activity" do not constitute cognizable defenses to his claims.

 In the alternative, defendant seeks to use the evidence of plaintiff's illegal alien status and alleged misconduct at trial "to challenge plaintiff's propensity to tell the truth." Fed.R.Evid. 611(b) provides, in pertinent part, that "[c]ross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness." Fed.R.Evid. 608(b) implements this by providing that specific instances of misconduct may not be proved by extrinsic evidence, but "may, ... in the discretion of the court, if probative of truthfulness or untruthfulness be inquired into on cross-examination of the witness ... concerning the witness' character for truthfulness or untruthfulness...." Thus, evidence of prior criminal acts that did not result in conviction may be used to impeach a witness's credibility if such acts tend to impugn that witness's credibility. *See United States v. Leonardi,* 623 F.2d 746, 757 (2d Cir.), *cert. denied,* 447 U.S. 928, 100 S.Ct. 3027, 65 L.Ed.2d 1123 (1980).

Evidence that a witness has made false statements is obviously a matter that tends to impugn a witness's credibility. *See United States v. Williams,* 986 F.2d 86, 88–89 (4th Cir.) (evidence that defendant had fraudulently obtained a fake driver's license and used it to cash stolen checks was probative of defendant's truthfulness and thus could have been used to impeach him if he had chosen to testify), *cert. denied,* 509 U.S. 911, 113 S.Ct. 3013, 125 L.Ed.2d 703 (1993); *United States v. Jones,* 900 F.2d 512, 520–21 (2d Cir.) (prosecution permitted to cross-examine witness concerning false statements made on applications for employment, an apartment, a driver's license, a loan, membership in NASD and on income tax returns), *cert. denied,* 498 U.S. 846, 111 S.Ct. 131, 112 L.Ed.2d 99 (1990).

Here, it is undisputed that plaintiff is a Polish citizen who arrived in this country in 1990 and has remained here after the expiration of his visa.[3] Ford has cited no authority,

---

2. Plaintiff naturally disputes this contention; he argues that the task of changing the air suspension pillow on Mr. Mieczkowski's car was "not very difficult and was accomplished literally in a matter of minutes." Affidavit of Jay W. Dankner, sworn to May 16, 1996, at ¶ 5.

3. At a recent conference, plaintiff represented to the court that he has filed all of the necessary papers to obtain resident alien status, and is awaiting approval from the Immigration and Naturalization Service.

**208**

and the court is aware of none, to support the conclusion that the status of being an illegal alien impugns one's credibility. Thus, by itself, such evidence is not admissible for impeachment purposes.

According to Ford, plaintiff obtained a social security number and driver's license under false pretenses in order to obtain full-time employment unlawfully. However, Ford has not adduced any specific evidence to support its contention that plaintiff made misrepresentations to anyone about his immigration status. Absent such evidence, defendant's motion for leave to cross-examine plaintiff on these issues is denied.

 Finally, plaintiff admits that he has failed to file income tax returns or pay income taxes while in this country. Controlling case law dictates that such conduct bears directly on a plaintiff's propensity for truthfulness and must be admitted for impeachment purposes if plaintiff takes the stand. *Chnapkova v. Koh,* 985 F.2d 79, 82 (2d Cir. 1993) (evidence that plaintiff failed to file tax returns for eight years could be used to attack her credibility on cross-examination in medical malpractice action).[4] Accordingly, defendant's motion to cross-examine plaintiff concerning his failure to file tax returns is granted.

SO ORDERED.

---

4. Plaintiff attempts to distinguish *Chnapkova* by arguing that the plaintiff's credibility in that case was of "crucial importance." According to plaintiff, his credibility is not of such importance here, since "all parties agree that the subject jack was provided by Ford Motor Company with the Lincoln Town Car, that it was used to elevate the vehicle, and that it collapsed as a result of the stripping of the internal threads in the trunnion area and that, as a result, plaintiff was injured." Plaintiff thus contends that evidence of his failure to file tax returns should be excluded under Fed.R.Evid. 403 as more prejudicial than probative. Concededly, this case does not stand or fall solely on the credibility of plaintiff's testimony. However, there are a number of critical issues in dispute, and plaintiff's testimony will be very important to his case.