Tracey D. WOLAK, Plaintiff–Appellant,

v.

Ferdinand J. SPUCCI, Individually, Defendant;

Dennis Carroll, Individually, and Village of Pelham Manor, New York, Defendants–Appellees.

Docket No. 99–7535.

United States Court of Appeals, Second Circuit.

Argued Jan. 27, 2000.

Decided June 23, 2000.

John A. Keeffe, J.A. Keeffe, P.C.; William G. Rives, of counsel, on the brief, Scarsdale, NY, for Plaintiff–Appellant.

David L. Posner, McCabe & Mack, L.L.P., Poughkeepsie, NY, for Defendants–Appellees.

Laura Rossi–Ortiz, for Amicus Curiae, The League of Women Voters of New York State, My Sister's Place, National Organization for Women, Westchester Chapter, Pace Women's Justice Center, and Westchester Women's Agenda, Mount Kisco, NY.

Before VAN GRAAFEILAND, STRAUB, and POOLER, Circuit Judges.

POOLER, Circuit Judge.

Tracey Wolak, a seven-year veteran of the Pelham Manor police force, brought a civil rights action against the police chief, mayor, and village of Pelham Manor. She alleged that police officers failed to "back her up" in the field, demeaned her with pornographic and other derogatory postings, and denied her equal facilities at the police station.[1] A jury determined that there was a hostile work environment but found that it did not injure Wolak. The jury rejected Plaintiff's allegation of unequal facilities. On March 17, 1999, Judge Charles L. Brieant of the Southern District of New York entered judgment dismissing plaintiff's claim. Wolak appeals, arguing that the district court committed reversible error by allowing inquiry into her out-of-work sexual behavior and by excluding her psychiatric expert. Wolak further contends that the jury's verdict with respect to equal facilities was plainly in disregard of the law and should have been overturned.

We conclude that admitting evidence of Wolak's sexual behavior violated Fed. R. Evid. 412. However, we also find that the district court did not err by excluding plaintiff's psychiatric expert and that plaintiff offered no other evidence of damages. Because plaintiff failed to establish an element of her case, the district court's Rule 412 error was harmless, and we decline to disturb its judgment.[2]

## BACKGROUND

Tracey Wolak joined the Pelham Manor police force on January 11, 1990, when she was 23 years old. The following year, she completed K–9 training and became Pelham Manor's only K–9 officer. Over the years, she and her dog Max received recognition, both nationally and internationally. Plaintiff was the first and, as of the time this lawsuit was filed, the only female police officer to serve in Pelham Manor.

Wolak alleged, however, that problems began almost as soon as she joined the police department. Wolak heard from an unknown source that her sergeant had referred to her and Max as "Miss Muffet and the Bionic Dog" and said that "he would never back [her] up" if she were in need of help. She complained to lieutenant Paul Cusano and Chief Carroll and received a new assignment. Wolak alleged that backup delays arose nonetheless and attributed them to gender bias.

Pelham Manor had no formal sexual harassment policy until November, 1997, after Wolak filed her lawsuit, and defendants do not dispute that police officers brought pornography (including posters,

---

1.  She also alleged that she was denied a promotion because of gender discrimination, but that issue is not part of her appeal.

2.  Plaintiff failed to move for a directed verdict at trial, and is therefore precluded from challenging the jury's verdict. *See Cruz v. Local Union No. 3 of Int'l Bhd.,* 34 F.3d 1148, 1155 (2d Cir.1994) ("[J]udgment as a matter of law is limited to those issues 'specifically raised in [a] prior motion for a directed verdict' ") (citation omitted), unless "required to prevent manifest injustice," *Gierlinger v. Gleason,* 160 F.3d 858, 868–70 (2d Cir.1998)—a circumstance clearly not present here. In addition, to the extent Wolak attempts to appeal the denial of her motion for a new trial "on the ground that the verdict was against the weight of the evidence, such a ruling is not reviewable on appeal." *Dailey v. Societe Generale,* 108 F.3d 451, 458 (2d Cir .1997) (citation omitted). Consequently, we give no further consideration to her equal-facilities claim.

videos, and magazines) into the police station. In January, 1992, Wolak first mentioned the pornography to chief Carroll. Wolak complained, because a high school girl interviewing her had to walk through the men's locker room—which contained much of the pornography—to access the police department's VCR. Wolak herself often traversed the locker room to reach the kitchen and a unisex bathroom. Carroll ordered the pornography removed, but a poster of the stripper Busty Heart appeared in February, 1992. Busty Heart signed the poster, "To the Pelham Manor Police Department, a cop's best friend is a big bust." Wolak removed the poster and again complained to the chief. As she described the encounter, "I said it was inappropriate, it was against the policy of taking the pinups down that he had set and he said that he allowed it to go up because it was a lark and it was a fraternity thing, that the boys won it in a raffle . . . ."

Police officers continued to bring pornography to work. Chief Carroll's notes on February 5, 1993, suggest that the pornography was intended for Wolak: "[Lieutenant] says Courtien says there were no magazines in bathroom yesterday. They only put them there when she come[s] to work." Wolak began to collect the pornographic materials and kept a log of what she found. In addition to pornography, Wolak collected a number of other locker room postings. For example, two posted teletypes reported the death of police officers. In one case, the slain officer was a woman; in the other, the officer's partner was a woman. Wolak believed that posting the teletypes conveyed the message that the female police officers were to blame.

Wolak bases her appeal largely on two of the district court's rulings. First, she claims that the district court erred in asserting that Rule 412 "is not by its terms directly applicable to this case" and by allowing inquiry into Wolak's sexual behavior outside work. Although the assigned magistrate judge denied the defense's discovery request for allegedly sexually explicit photographs of plaintiff and her boyfriend, the district court revealed its view of the potential relevance of some evidence of Wolak's sex life, declaring the need for

> balance and practicality in dealing with . . . plaintiff's sexual sophistication in the context of a hostile environment case. At least for purposes of computing her damages for shame and humiliation and the like, no plaintiff should be permitted to portray herself to the trial jury falsely, as some sort of shrinking violet or as a novice in a nunnery.

Over objection at trial, the defense attorney asked plaintiff about two parties at which pornographic videos were shown while she was present, and two or three other occasions on which she watched sexual acts as they were performed.

Wolak also contends that the district court improperly excluded a psychiatric expert who would have testified about the damages Wolak suffered. On October 20, 1997, plaintiff responded to an interrogatory request by stating that " 'she ha[d] not yet designated an expert witness in this matter, but reserve[d] the right to supplement . . . should one be so retained.' " Wolak missed the court-imposed deadline of April 16, 1998, for designating expert witnesses. After representing to the magistrate judge on February 2, 1999, that discovery had been completed, plaintiff's counsel arranged to have Wolak examined by Dr. Lawrence Loeb. Wolak met with the doctor on two separate occasions. On February 10, three weeks before trial and almost a year after she should have disclosed the names of any experts, Wolak stated that she intended to call Dr. Loeb to testify. The district court granted defendants' motion to preclude.

## DISCUSSION

### Federal Rule of Evidence 412

Rule 412, as amended in 1994, states that evidence of an alleged victim's "sexual

behavior" or "sexual predisposition" is inadmissible, with limited exceptions, in all "civil or criminal proceeding[s] involving alleged sexual misconduct." Fed. R. Evid. 412(a). The Rule's expanded protection "aims to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the factfinding process." Rule 412, Advisory Committee Notes to 1994 Amendments ("Advisory Committee Notes"). In a civil case, "otherwise admissible" evidence may only be introduced if the proponent can show that "its probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party." Rule 412(b)(2) (reversing the usual presumption of admissibility set forth in Fed. R. Evid. 403). Unless the court specifies otherwise, a party seeking to introduce evidence covered by Rule 412 must file a motion no later than 14 days before the start of trial, giving notice of the evidence and its purpose. *See* Fed. R. Evid. 412(c)(1)(A). A court, "[b]efore admitting evidence ... must conduct a hearing in camera and afford the victim and parties a right to attend and be heard." 412(c)(2).

■ We hold that Rule 412, which explicitly includes civil cases involving sexual misconduct, encompasses sexual harassment lawsuits. *See* Advisory Committee Notes ("Rule 412 applies in any civil case in which a person claims to be the victim of sexual misconduct, such as ... sexual harassment."); *see also Holt v. Welch Allyn, Inc.*, No. 95–CV–1135, 2000 WL 98118 *1 (N.D.N.Y. Jan.11, 2000); *Socks–Brunot v. Hirschvogel, Inc.*, 184 F.R.D. 113, 118–119 (S.D.Ohio 1999); *Herchenroeder v. Johns Hopkins Univ. Applied Physics Laboratory*, 171 F.R.D. 179, 181 (D.Md. 1997); *Barta v. City and County of Honolulu*, 169 F.R.D. 132, 134–35 (D.Haw.1996); *Sheffield v. Hilltop Sand & Gravel Co.*, 895 F.Supp. 105, 109 (E.D.Va.1995). Thus, we find that the district court erred in con-

cluding that Rule 412 did not govern the admissibility of evidence of Plaintiff's sexual behavior.

■ Defendants contend that even assuming Rule 412 generally applies to sexual harassment, it does not apply here, because "[t]here were no questions about [Wolak's] sexual behavior or predisposition." The Advisory Committee Notes, however, explain that "behavior" encompasses "activities of the mind, such as fantasies." *See also Sheffield*, 895 F.Supp. at 108 (noting that Rule 412's ban on sexual predisposition evidence includes matters " 'relating to the alleged victims's mode of dress, speech, or lifestyle' ") (quoting Advisory Committee Notes). Because viewing pornography falls within Rule 412's broad definition of behavior, defendants' extensive questions were subject to the Rule.

■ Moreover, the evidence elicited in response to defendant's questions should not have been admitted under the criteria set forth in the Rule. Defendants argue that questions regarding Wolak's viewing of pornography were relevant to the subjective prong of the hostile work environment test—whether she was actually offended—and to damages. We conclude that the evidence was of, at best, marginal relevance. Whether a sexual advance was welcome, or whether an alleged victim in fact perceived an environment to be sexually offensive, does not turn on the private sexual behavior of the alleged victim, because a woman's expectations about her work environment cannot be said to change depending upon her sexual sophistication. *See, e.g., Burns v. McGregor Electronic Industries, Inc.*, 989 F.2d 959, 962–63 (8th Cir.1993) (holding that plaintiff's posing for nude pictures for magazine did not indicate sexual advances at work were welcome); *cf. Gallagher v. Delaney*, 139 F.3d 338, 346 (2d Cir.1998) (holding that plaintiff's extramarital office affair did not permit court to find as a matter of law that plaintiff was open to sexual advances). Even if a woman's out-of-work sexual experiences were such that she could per-

haps be expected to suffer less harm from viewing run-of-the-mill pornographic images displayed in the office, pornography might still alter her status in the workplace, causing injury, regardless of the trauma inflicted by the pornographic images alone. Thus, defendants failed to establish that "the probative value" of Wolak's admissions concerning her activities outside the office, "substantially outweighed the danger of harm … and of unfair prejudice," and the evidence was not admissible. Fed. R. Evid. 412(6)(2).

### Psychiatrist's Report

■ The district court did not abuse its discretion by precluding Wolak's psychiatric expert from testifying. See *Softel, Inc. v. Dragon Med. And Scientific Communications, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997) ("We review the district court's order for abuse of discretion."); *Dunlap–McCuller v. Riese Organization*, 980 F.2d 153, 158 (2d Cir.1992) ("A district court's decision to permit or to exclude testimony by a witness who was not listed in the pretrial order will not be disturbed absent a clear abuse of discretion."). Wolak complains that the exclusion was "unfair" but offers no relevant authority. *Dunlap–McCuller* lists several factors for a court to consider: prejudice or surprise; ability to cure; disruption of trial efficiency; and bad faith or willfulness. See *id.* *Softel* lists similar factors: "the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony;" "the possibility of a continuance;" "the party's explanation for the failure to comply with the discovery order;" and "the importance of the testimony of the precluded witness." *Softel*, 118 F.3d at 961 (citing *Outley v. City of New York*, 837 F.2d 587, 590–91 (2d Cir.1988)). The district court's decision was not an abuse of discretion under either test.

Announcing a witness at the last minute caused surprise and prejudice. While proof of damages was a basic element of Wolak's case, it does not follow that defendants should have expected a psychiatric expert where none had been announced. The absence of expert testimony certainly weakened plaintiff's case, but, after the deadlines for disclosure of experts passed, defendants had a right to assume Wolak would adduce evidence of damages primarily through her own testimony. Because the disclosure came so late, defendants would have been hard pressed to depose Wolak's expert and to find one of their own.

A delay of the trial might have cured that prejudice, but, at oral argument, plaintiff's counsel conceded there was no request for an adjournment. *Cf. Outley*, 837 F.2d at 591 (finding that the district court abused its discretion in part because it ignored a suggestion for a continuance). Moreover, the district court made the decision to preclude the expert based in part on the representation that Wolak's treating physician could and would testify at trial if necessary. Even if requested, however, a continuance would have come at the expense of trial efficiency. Finally, while the delay seems to have resulted more from neglect than bad faith, Wolak's attorney should have disclosed his intention to procure a psychiatric witness at the instant he realized one was needed, and the attorney has offered no adequate reason for the delay. Waiting an extra week, until after plaintiff's second meeting with the psychiatrist, added extra and unnecessary time pressure. We conclude, after reviewing the pertinent facts, that the district court acted within the limits of its discretion when it excluded Dr. Loeb's testimony.

### C. Damages

■ Having found that the district court erroneously allowed testimony concerning Wolak's sexual behavior outside the workplace but committed no error in excluding Dr. Loeb's testimony, we must determine whether the erroneously admitted testimony requires reversal. We find that it does not, because plaintiff offered no evidence

from which the jury could infer that the hostile work environment at the police department injured her. The *amicus curiae* contends that the jury's failure to award damages after finding a hostile environment proves that the improper evidence of plaintiff's sexual behavior had a prejudicial impact. Brief for *Amicus Curiae* at 7–8. We would agree were there any evidence of harm to plaintiff, but, in fact, the jury's verdict followed inevitably from plaintiff's failure to introduce any evidence of damages. Plaintiff did not testify that she took offense at the pictures or suffered mental anguish, nor was her treating physician called to testify to the physical symptoms she allegedly suffered, as she suggested in counsel's opening remarks to the jury. Moreover, she concedes that at trial "there was no evidence connecting [her] injuries, as found by Dr. Loeb (i.e. ulcers, Epstein Barr syndrome, and cluster migraine headaches) to the hostile work environment." Nor does plaintiff point to any other testimony from which a jury might have found damages.

## CONCLUSION

Although the district court erred by finding Rule 412 inapplicable and by allowing some inquiry into plaintiff's sexual behavior outside of work, that evidence did not prejudice plaintiff's case. The jury concluded that there was a hostile work environment. Given the lack of evidence, it could not have found damages. The judgment of the district court is, therefore, Affirmed.