**Latoya CHAMBLEE, Plaintiff,**

v.

**HARRIS & HARRIS, INC. d/b/a McDonald's Restaurant and Jeffrey Artis, Defendants.**

**No. 00 CIV. 3488(CM).**

United States District Court,
S.D. New York.

July 18, 2001.

Bernard Weinreb, Suffern, NY, for Plaintiff.

L. Lynnette Sarno, Thurm & Heller, LLP, New York City, Defendants.

**MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING PART THE PARTIES' *IN LIMINE* MOTIONS**

MCMAHON, District Judge.

Plaintiff Latoya Chamblee brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* and the New York State Human Rights Law, N.Y. Exec L., §§ 290–301 against defendants Harris & Harris, Inc. d/b/a McDonald's Restaurant ("McDonald's") and Jeffrey Artis, alleging that she was the subject of sexual harassment at work. Defendants move to dismiss plaintiff's claim of constructive discharge, and her claim for individual liability against Artis. Defendants also cross-move for admission of plaintiff's sexual conduct. Each party moves *in limine* to preclude the other from adducing certain evidence at trial.

## FACTS PERTINENT TO THE MOTION

On a motion for summary judgment, the Court views the facts most favorably to the non-moving party—in this case, the plaintiff.

In or about October 1996, plaintiff Latoya Chamblee began working as a Swing Manager for defendant Harris & Harris, Inc. d/b/a McDonald's Restaurant ("McDonald's") in Spring Valley, New York. Defendant Jeffrey Artis was McDonald's General Manager and was plaintiff's supervisor while she worked at McDonald's.

In December 1996, Artis allegedly went to Chamblee's house to give her a ride to work. Plaintiff claims that she had sex with him—which Artis disputes—because she feared that resisting his advances

would adversely affect her position at Mc-Donald's.

After the incident, plaintiff made it clear to Artis that she was not interested in a romantic relationship. Plaintiff alleges that from that time on, Artis harassed plaintiff—both physically and verbally—on a steady basis. On one occasion, defendant Artis enticed her into a storage room, exposing his penis, saying: "I was supposed to show you all this. I didn't show you this part during your training." (Chamblee Dep. at 10.) He also made jokes that her boyfriend was "not doing [her] right."

On other occasions, Artis grabbed her between her legs, squeezed her breasts, slapped her bottom, and fondled and touched her in an inappropriate manner and against her will. (Compl. ¶ 15.) According to plaintiff, every time she worked with Artis, he made a sexual comment or a sexual advance. He allegedly groped her in the stockroom, the freezer, the manager's office, at the "drive-thru," in the lobby and near his car.

When plaintiff asked Artis for more hours and a raise, Artis allegedly replied: "Sure, I will give you one . . . . If you know how to act, you will get what you want." (Chamblee Dep. at 44.) Defendant Artis says that he denied her request because her performance was less than satisfactory and business was too slow.

On July 4, 1997, plaintiff and defendant Artis had a heated argument when Artis telephoned McDonald's looking for plaintiff's co-worker, Warren Delanie. Plaintiff picked up the phone, and Artis suspected that she was covering for Delanie by making excuses that he was in the rest room. When Artis called back and concluded that she was, in fact, covering for Delanie, he said to her: "I will deal with you when I get there Monday." Plaintiff responded, "We'll see who deals with who." (Id. at 133.) On the Monday after the July 4th weekend, plaintiff looked at her work schedule, and found out that some of her work days had been crossed out.

After her hours were cut, plaintiff complained to Artis about the change, and was told that if she "would submit to his demands for sex, [her] hours would be increased." (Chamblee Aff. at ¶ 15.) Plaintiff decided she was going to leave her job at McDonald's, and planned to "talk to Mr. Harris to let him know why." (Chamblee Dep. at 135.) Aaron Harris was the owner of McDonald's.

On or about July 22, 1997, plaintiff gave notice to Artis that she would be resigning her position in two weeks. She testified that she did so because she did not need the "job or the hassle" any more. (Id. at 69.) On that same day, she spoke with Harris. She told him that she had given her two-weeks notice to Artis, and explained that they had slept together, and that Artis subsequently had inappropriately touched her when they worked together. (Chamblee Dep. at 74.) Harris told plaintiff that he was going to investigate the matter, but she asked him not to raise the issue until after she left her position at McDonald's.

Harris then summoned Artis and asked plaintiff to repeat her allegations in his presence. Artis denied all of her allegations, and said that she was lying. Artis claimed that plaintiff had been throwing herself on him and the other men at work. Harris collected the names of individuals who knew about the situation, and promised that he was "going to check with these people to see what they had to say. He said if he found any of this to be true that Jeff [Artis] was out of there because that type of thing is not tolerated." (Id. at 75–76.)

After the confrontation, plaintiff did not return to work because she was afraid of the look that Artis had given her that day.

Harris claims that he contacted and interviewed the witnesses that plaintiff claimed were aware of the harassing behavior. According to Harris, "Each of the witnesses advised me that they had never observed Mr. Artis engaged in any of the conduct described by the plaintiff and attested to the excellent character of Mr. Artis." (Harris Aff. at ¶ 13.)

In August 1997, plaintiff filed a charge of sex discrimination with the New York State Division of Human Rights ("NYSDHR") and the United States Equal Opportunity Commission ("EEOC"). On August 26, 1999, the NYSDHR issued a determination of "probable cause to believe that the respondent engaged or is engaging in unlawful discriminatory practice complained of." (Sarno Aff. at Ex. H.). On March 21, 2000, the EEOC issued a notice informing plaintiff of her right to sue in federal court.

Plaintiff alleges that she was subject to a hostile work environment and that she was constructively discharged from her employment in violation of Title VII of the Civil Rights Act of 1964 and the New York Human Rights Law.

Defendants argue that there is no evidence that, at the time of plaintiff's resignation, the conditions became so intolerable that she was "forced" to resign. To the contrary, they contend that plaintiff herself was the source of the inappropriate workplace behavior, such as: boasting about her sexual prowess; exposing her private parts to a co-worker; making sexual advances toward defendant Artis; using sexually profane language in reference to herself; and recruiting co-workers to participate in an "escort business." (Def. Reply Mem. In Supp. of Mot. for Admiss. of Pl.'s Sexual Conduct at 3.) They also move to dismiss the claims against Artis on the grounds that Title VII does not allow for individual liability.

Defendants make motions *in limine* seeking to preclude plaintiff from adducing the following evidence at trial: (1) the determination of the State Division of Human Rights in the Matter of *Chamblee v. McDonald's Corporation*; (2) the allegations and facts surrounding plaintiff's claim that she contracted a sexually transmitted disease from defendant Artis; (3) the testimony of proposed witnesses Rita Charles and Shamika Middleton. Defendants also cross-move for admission of plaintiff's sexual conduct.

Plaintiff makes motions *in limine* to preclude evidence of (1) her history as a call girl; (2) her sexual activity outside of McDonald's; and (3) discussions she had with fellow employees about starting an escort service; and (4) her failure to pay taxes.

I conclude that the record reveals genuine issues of fact to be tried with respect to Chamblee's claims of hostile work environment and constructive discharge. Although I should note that the specific phrase "constructive discharge" was not used in plaintiff's complaint, defendant has interpreted the pleading to encompass this theory, and moves for summary judgment on the "constructive discharge" theory exclusively. The Complaint asserts that Artis continually harassed Chamblee, and that he did so deliberately and continually in the face of her refusals, and that it essentially caused her to become unable to work at all. Such allegations are sufficient to encompass a theory of constructive discharge.

For the following reasons, defendants' motion for summary judgment is denied, and plaintiff's and defendants' motions *in*

*limine* are granted in part and denied in part.

## DISCUSSION

Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue for trial exists if, based on the record as a whole, a reasonable jury could find in favor of the non-movant. *See Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. 2505. In making its determination, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *See id.* at 255, 106 S.Ct. 2505. To defeat summary judgment, the non-moving party must go beyond the pleadings and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). When opposing a motion for summary judgment, it is not sufficient for the non-moving party to present evidence that is conclusory or speculative, with no basis in fact. *See Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505. While Plaintiffs need not produce direct evidence of an alleged civil rights violation, they must be able to produce evidence, in admissible form, that is more than surmise and speculation which is based on their own subjective beliefs. *See Matsushita*, 475 U.S. at 576, 106 S.Ct. 1348.

1. *Motion for Summary Judgment on the Constructive Discharge Claim is Denied*

█ Defendants' motion for summary judgment on plaintiff's claim of constructive discharge is denied. Constructive discharge of an employee occurs when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily. *Chertkova v. Connecticut Gen. Life Ins.*, 92 F.3d 81, 89 (2d Cir.1996). Working conditions are intolerable if they are "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Id.; see also Lopez v. S.B. Thomas*, 831 F.2d 1184, 1188 (2d Cir. 1987) ("A constructive discharge occurs when the employer, rather than acting directly, deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation.") (internal quotation marks omitted). To find that an employee's resignation amounted to a constructive discharge, "the trier of fact must be satisfied that the ... working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Lopez*, 831 F.2d at 1188 (internal quotation marks omitted).

█ Constructive discharge requires deliberate action on the part of the employer. Although limited defenses may be available, an employer is presumed responsible where, as here, the perpetrator of the harassment was also the victim's supervisor. *See, e.g., Burlington Indus. v. Ellerth*, 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

While the meaning of "deliberate" in this context is unsettled, *see Kader v. Paper Software, Inc.*, 111 F.3d 337, 340 (2d Cir. 1997) ("Neither our cases nor New York law have examined what relationship between deliberateness and the intolerability of working conditions is required to constitute constructive discharge."); *Ternullo v. Reno*, 8 F.Supp.2d 186, 191 (N.D.N.Y.1998) (noting disagreement in Second Circuit between cases requiring intent to force em-

ployee into quitting and cases requiring no such specific intent), our case law indicates that something beyond mere negligence or ineffectiveness is required. *See, e.g., Kader*, 111 F.3d at 341 ("[Plaintiff] has demonstrated that an uneasy and stressful environment existed, but he has adduced no evidence to support an inference that his employer intentionally created an intolerable workplace."); *Chertkova*, 92 F.3d at 89 (finding constructive discharge where "supervisor engaged in a pattern of baseless criticisms, said [plaintiff] would not 'be around,' and that [plaintiff] would be fired instantly if she did not meet certain ambiguous behavior objectives"); *Lopez*, 831 F.2d at 1188 (finding evidence of constructive discharge because supervisor told employer "he would be fired at the end of [a] probationary period no matter what he did to improve his allegedly deficient performance").

Plaintiff has alleged that she had sex with Artis; that he subsequently harassed and groped her at every opportunity he had at work; that he explicitly tied her possibility of a promotion to her having sex with him; and that he exposed himself to her. Defendant denies all of those facts, and claims that plaintiff was the sexual aggressor in these circumstances and voluntarily left McDonald's when she found out that her hours had been cut. Defendant makes much of the fact that plaintiff gave notice of her resignation before she even reported the alleged harassment to Harris. However, a reasonable jury could conclude that Artis had made plaintiff's working conditions so unpleasant that a reasonable person in Chamblee's shoes would have felt compelled to resign as she did.

Nearly every material fact in this case is subject to a dispute. As a result, defendant's motion for summary judgment on the constructive discharge theory is denied.

2. *Claims against Artis as an Individual are Not Dismissed Under the New York Human Rights Law.*

■ Defendant Artis has moved to dismiss the claims against him in his individual capacity because Title VII does not allow for individual liability. *See Tomka v. Seiler*, 66 F.3d 1295 (2d Cir.1995). Defendant is correct. This Circuit does not recognize individual liability under Title VII, and the claims brought against Artis pursuant to that statute are therefore dismissed.

■ There is a viable claim against Artis, however, under the New York State Human Rights Law 296(1)—the New York analog to Title VII. Section 296(1) of the HRL states that "[i]t shall be an unlawful discriminatory practice [f]or an employer ... to discriminate against such individual in terms, conditions or privileges of employment." The only definition of the employer for purposes of section 296(1) of the HRL is that "[t]he term 'employer' does not include any employer with fewer than four persons in his employ." N.Y. Exec. Law § 292(6). The New York Court of Appeals has stated that: "[a] corporate employee, though he has a title as an officer and is the manager or supervisor of a corporate division, is not individually subject to suit with respect to discrimination under New York's Human Rights Law if he is not shown to have any power to do more than carry out personnel decisions made by others." *Patrowich v. Chemical Bank*, 63 N.Y.2d 541, 542, 483 N.Y.S.2d 659, 473 N.E.2d 11 (1984).

■ Consequently, if an employee does have sufficient authority and power to do more than simply carry out personnel decisions made by others, he can be held liable under the HRL. *Id.; see also Gemerek v.*

*Buffalo Sewer Auth.,* No. Civ. A. 99–0879, 2001 WL 603694 (W.D.N.Y. May 23, 2001); *Hicks v. IBM,* 44 F.Supp.2d 593, 599 (S.D.N.Y.1999). *Patrowich* noted that "economic reality" governs who may be sued under the HRL. *Patrowich,* 63 N.Y.2d at 544, 483 N.Y.S.2d 659, 473 N.E.2d 11 (citing *Carter v. Dutchess Comm. Coll.,* 735 F.2d 8, 14 (2d Cir.1984) ("whether the alleged employer could hire and fire the worker, control work schedules and conditions of employment, determine the rate and method of payment, and maintain employment records"); *Donovan v. Agnew,* 712 F.2d 1509, 1514 (1st Cir. 1983) ("corporate officers with a significant ownership interest who had operational control of significant aspects of the corporation's day to day functions, including compensation of employees")).

Section 296(6) of the HRL states that "[it] shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." The Second Circuit Court of Appeals has held that, under section 296(6), employees who are not shown to have any power to do more than carry out personnel decisions made by others, but who actually participate in discriminatory conduct, can still be liable the HRL. *Tomka v. Seiler Corporation,* 66 F.3d 1295, (2d Cir.1995). The New York Court of Appeals has not decided whether section 296(6) allows an employee to be held liable as an aider and abettor if he participates in the discriminatory conduct but does not have any power to do more than carry out personnel decisions made by others, and the Appellate Divisions of

the New York Supreme Court are split on the issue. *See Hicks,* 44 F.Supp.2d at 599 n. 3 (noting that the holding of *Tomka* is a subject of controversy among the New York courts); *Gemerek,* 2001 WL 603604 at *2 (same).

■ The issue that divides the courts is not present in this case. Defendant Artis may be held personally liable under 296(1) [1]—which allows for employee liability where that employee has power to do more than "simply carry out personnel decisions made by others," *Patrowich,* 63 N.Y.2d at 543, 483 N.Y.S.2d 659, 473 N.E.2d 11—because as the General Manager of McDonald's in Spring Valley, Artis had the authority to set schedules and salaries, and to assign hours to the employees, without consultation. Artis clearly was empowered to do more than simply carry out others' personnel decisions, and was the source of all of the alleged discriminatory conduct.

Because this state claim arises from the same case or controversy as the federal Title VII action, this Court will exercise supplemental jurisdiction over it under 28 U.S.C § 1367(a).

3. Defendants' Motions *In Limine*

a. *Determination of the New York State Division of Human Rights*

■ Defendants make a motion pursuant to Fed.R.Evid. 403 to preclude admission into evidence of the New York State Division of Human Rights' finding that there was "probable cause" that defendant had engaged in unlawful discriminatory practices. The Second Circuit leaves the

---

1. Plaintiff's Complaint states that Artis "was the store supervisor of McDonald's and was an 'employer' as defined by Section 292(5) of the N.Y. Human Rights Law because he had the power to do more than carry out personnel decisions made by others, and was an 'aider and abettor' pursuant to the N.Y. Human Rights Law." (Compl.¶ 7.) Because a primary actor cannot be an aider and abettor of his own actions, *Hicks,* 44 F.Supp.2d at 600, this plaintiff will not be permitted to proceed on a theory that implicates Section 296(6).

question as to whether to admit EEOC or state agency findings to the sound discretion of the district court. *Paolitto v. John Brown E & C, Inc., et al,* 151 F.3d 60, 65 (2d Cir.1998). Documents are properly excluded where there is a "likelihood that the trial will deteriorate into a protracted and unproductive struggle over how the evidence admitted at trial compared to the evidence considered by the agency . . ." *Id.*

Defendants argue that the prejudice to the defendants of including this finding would significantly outweigh its probative value because the evidence gathered is mirrored in the present action, and because it is an unnecessary obstacle for defendants to explain the distinction between the SDHR's decision and the jury's role at trial. (Def. Mem. of Law at 10–11.) They also object to the fact that the SDHR relies heavily on the witness statement of Rita Charles—and there is no record of her employment at McDonald's.

The motion to exclude the New York State Division of Human Rights finding is denied. The State Division of Human Rights conducted an investigation over several months, interviewed witnesses, conducted a fact-finding hearing at which both sides were represented by counsel, and reached a conclusion that there was probable cause to find that plaintiff was harassed. The jury will view the evidence of the EEOC "probable cause" finding in the context of a limiting instruction that a finding of "probable cause" is not a final determination of liability, and that they have an independent duty as fact finders to make their own determination of the issue. I will not admit the report; I will simply allow the jury to know the finding.

b. *Plaintiff's Allegations That She Contracted a Sexually–Transmitted Disease from Artis*

■ Defendants also make a Fed. R.Evid. 403 objection to the admission of

plaintiff's allegations that she was infected by Artis with a sexually-transmitted disease. Plaintiff claims that subsequent to her sexual relations with Artis, she was diagnosed with trichomoniasis.

Defendants object to this testimony because there is no evidence in the record of a doctor's diagnosis. While plaintiff authorized defendants to obtain her medical records, all efforts to contact plaintiff's doctor, Ricky Brooks, were fruitless. Dr. Brooks allegedly responded to their requests by stating that he was not in possession of any of plaintiff's medical records. Plaintiff claims that she is prepared to call Dr. Brooks, who allegedly diagnosed and treated the trichomoniasis, at trial.

Defendant's motion *in limine* to exclude this evidence is granted, but on other grounds. Plaintiff can prove that she had sex with Artis without involving the jury in the collateral issue of whether, on that one occasion, she contracted a sexually-transmitted disease from him. As she offers no medical proof that he had trichomoniasis, her allegations are too speculative to be admitted. The only evidence in the record that plaintiff contracted trichomoniasis from defendant Artis is her claim that she had not had unprotected sex with anyone else for some six years. (Chamblee Aff. at ¶ 7.) Testing that claim would require opening the Pandora's box of plaintiff's allegedly extensive sex-life during that period—a result plaintiff herself hopes to avoid. (See Point 4.a. below). This Court is not prepared to entertain such a frolic and detour.

Furthermore, plaintiff's allegation that she contracted a sexually-transmitted disease from Artis is of little probative value as to whether she was constructively discharged from her employment as a result of defendant Artis' harassing behavior. In fact, it is hardly relevant to the central

issue of the case and highly prejudicial to the defendant.

This testimony will not be allowed at trial.

### c. *Witnesses Rita Charles and Shamika Middleton*

█ Finally, defendants object to the inclusion of Rita Charles and Shamika Middleton as witnesses. Plaintiff claims that Charles and Middleton were also harassed at McDonald's (Chamblee Aff. at ¶ 19.), and that these individuals have knowledge of Artis' actions toward her. McDonald's payroll records reflect that Middleton was employed by Harris & Harris, Inc. from December 11, 1995 to July 12, 1996, and from July 20, 1997 to August 1, 1997. (Harris Aff. at ¶ 8.) There is no record of a "Rita Charles" being employed by Harris & Harris. (Id. at ¶ 5.)

According to defendants, when they asked plaintiff for contact information for these two potential witnesses, plaintiff provided a beeper number for Charles, and told them that Middleton was residing in Kentucky. The SDHR interviewed Charles in making its report, but could not locate Middleton.

Non-party depositions in this case were scheduled for February 27, 2001, but despite plaintiff's assurances and defendants' appearance with a court reporter at plaintiff's office, both Charles and Middleton failed to appear. Plaintiff responds that she and her attorney attempted to have the witnesses appear, but were unsuccessful. (Chamblee Aff. ¶ 20–24.)

Of course, no subpoena was ever served on Charles and Middleton., so they had no obligation to appear for deposition. However, plaintiff did not give addresses or

other information that would have allowed a subpoena to be served.[2] In lieu of giving defendant enough information to prepare a subpoena, plaintiff agreed to produce the witnesses, but failed to do so.

The discovery cutoff date in this case was February 27, 2001. Because plaintiff failed to produce Charles and Middleton on the date of their depositions, defendants' opportunity to defend the alleged testimony of these witnesses has been greatly prejudiced. Accordingly, defendants' motion is granted, and the testimony of Charles and Middleton will be excluded.

### 4. Plaintiff's Motions *In Limine*

Plaintiff moves *in limine* to exclude evidence of (1) the fact that plaintiff worked as a call girl/escort; (2) plaintiff's sexual activities outside McDonald's; (3) plaintiff's discussions with co-employees regarding the opening of an escort business and other sexual topics; and (4) plaintiff's failure to pay federal and state income taxes from her private businesses.

### a. *Plaintiff's History as Call Girl and Sexual Activity Outside of Mc-Donald's*

█ Plaintiff moves to exclude evidence of the fact that she worked as a call girl/escort prior to her employment at McDonald's. The motion is granted.

Federal Rule of Evidence 412, *as amended in 1994, states that in civil or criminal proceedings involving alleged sexual misconduct, evidence of an alleged victim's "sexual behavior" or "sexual predisposition" is inadmissible, with limited exceptions. *Wolak v. Spucci*, 217 F.3d 157, 159 (2d Cir.2000) (quoting Fed.

---

**2.** If plaintiff does not know where they are, then obviously plaintiff cannot obtain their appearance at trial. If plaintiff does know

where they are, she should have advised defendants' counsel of their whereabouts.

R.Evid. 412(a)). The Rule's expanded protection "aims to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the fact-finding process." *Id.* (quoting Fed. R.Evid. 412, Advisory Committee Notes to 1994 Amendments ("Advisory Committee Notes")). Rule 412, which explicitly includes civil cases involving sexual misconduct, encompasses sexual harassment lawsuits. *Id.* ("Rule 412 applies in any civil case in which a person claims to be the victim of sexual misconduct, such as ... sexual harassment.") (quoting Advisory Committee Notes).

The Rule provides that in a civil case, "otherwise admissible" evidence may only be introduced if the proponent can show that "its probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party." Rule 412(b)(2) (reversing the usual presumption of admissibility set forth in Fed. R.Evid. 403).

For example, evidence of the victim's sexual conduct "on-duty, at the workplace, and with named defendant" may be discoverable, *see id.; see also Barta v. City and County of Honolulu,* 169 F.R.D. 132, 135 (D.Haw.1996), while other evidence, such as non-workplace conduct, is irrelevant and inadmissible. *Barta,* 169 F.R.D. at 136 (evidence of the victim's sexual conduct "off-duty, outside the workplace, and conduct not with named defendant[s]" was not discoverable); *Winsor v. Hinckley Dodge, Inc.,* 79 F.3d 996, 1001 (10th Cir. 1996) (a plaintiff's "private and consensual sexual activities do not constitute a waiver of his or her legal protections against unwelcome and unsolicited sexual harassment" at work) (citation omitted); *Burns v. McGregor Elec. Indus., Inc.,* 989 F.2d 959, 963 (8th Cir.1993) (holding that "[t]he plaintiff's choice to pose for a nude magazine outside work hours is not material to the issue of whether plaintiff found her employer's work-related conduct offensive").

Indeed, neither plaintiff nor defendant disputes that evidence of plaintiff's provocative speech or actions toward defendant Artis is admissible because it is probative of whether plaintiff was subject to a hostile work environment, or was constructively discharged from her employment at McDonald's—the central issues in this case.

Plaintiff's history as a call girl, and any other evidence of her sexual history, is irrelevant except to prove a sexual disposition of plaintiff, a purpose plainly forbidden by Rule 412. Accordingly, evidence governed by Rule 412 regarding plaintiff's speech and conduct with—and in the presence of—defendant Artis is admissible; but evidence of her sexual conduct outside the workplace (and unrelated to Artis) is not.

b. *Discussions With Other Employees About Starting an Escort Service and Other Sexual Topics*

Plaintiff's discussions with co-workers about starting an escort service, and her other sexual comments at work, stand on a different footing, and may well be relevant in this case. But it is too soon to rule on the issue.

Rule 412(b)(2) says that in a civil case, "evidence offered to prove the sexual behavior or sexual predisposition of any alleged victim is admissible if it is otherwise admissible under these rules and its probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party."

Rule 412 mandates certain procedural safeguards for the introduction of such

evidence under the 412(b)(2) exception. A party intending to offer such evidence must file a motion specifically describing the evidence and its purpose at least fourteen days before trial, serve the motion on all parties, and notify the alleged victim. Before admitting the evidence, the Court must conduct an *in camera* hearing to afford the victim and parties a right to be heard. Fed.R.Evid. 412(c).

Defendants made a cross-motion for admission of plaintiff's sexual conduct, and has duly served the motion on all parties more than fourteen days in advance of trial. I will make my ruling on whether evidence about plaintiff's provocative workplace speech and conduct substantially outweighs the danger of harm at an *in camera* hearing, as required by Rule 412(c), which we will conduct at the final pre-trial conference.

c. *Failure to Pay Taxes*

■ Plaintiff seeks to exclude evidence that she did not pay income taxes over the course of several years on the money she earned as an escort, and in her private manicure/pedicure business.

Fed.R.Evid. 611(b) provides, in pertinent part, that "[c]ross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness." Fed. R.Evid. 608(b) implements this by providing that specific instances of misconduct "may ... in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness...." Evidence that a witness has failed, for years, to file a tax return is a matter which affects the witness's credibility. *Chnapkova v. Koh*, 985 F.2d 79, 82 (2d Cir.1993); *Mischalski v. Ford Motor Co.*, 935 F.Supp. 203, 208 (E.D.N.Y.1996)

(noting that failure to pay income taxes bears "directly on a plaintiff's propensity for truthfulness and must be admitted for impeachment purposes if plaintiff takes the stand."). In *Chnapkova,* the Second Circuit held that because the plaintiff's credibility was of such crucial importance, and because her failure to file tax returns bore directly on her credibility, the district court's decision to exclude testimony regarding that failure was an abuse of discretion. *Id.* at 82. It held that the total failure to file tax returns for a period of eight years was admissible on the issue of her truthfulness. *Id.*

Plaintiff's testimony in the case at bar will be extraordinarily important, and evidence of her failure to pay taxes is admissible. It bears directly on her propensity for truthfulness, and will be admitted for impeachment purposes if plaintiff takes the stand, as I anticipate she will.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is denied. Plaintiff's and defendants' motions *in limine* are disposed of as indicated by this opinion. Defendant's cross-motion for admission of plaintiff's sexual conduct will be resolved after an *in camera* hearing.

This constitutes the decision and order of this Court.