CHIQUITA INT'L, LTD., et al., Plaintiffs,

v.

M/V CLOUDY BAY, her engines, boilers, tackle, furniture, apparel, etc., in rem, et al., Defendants.

No. 08 Civ. 1041(KNF).

United States District Court, S.D. New York.

Sept. 30, 2009.

Christopher M. Schierloh, Gregory George Barnett, Thomas Michael Grasso, Casey & Barnett, LLC, New York, NY, for plaintiffs.

Claurisse Ann Campanale-Orozco, Thomas Leonard Tisdale, Tisdale Law Offices, L.L.C., New York, NY, for defendants.

## MEMORANDUM and ORDER

KEVIN NATHANIEL FOX, United States Magistrate Judge.

In the above-captioned action, the plaintiffs, Chiquita International Limited ("Chiquita") and Great White Fleet Limited (collectively, "the plaintiffs"), invoking the court's admiralty and maritime jurisdiction, seek damages for an injury arising from the "premature ripening and turning" of bananas transported by the defendants—the Cloudy Bay ("the vessel"), Cloudy Bay Shipping Co., and Seatrade Group N.V. Curacao (collectively, "the defendants")—in May and June of 2006.

By an order, dated June 22, 2009, the Court directed the parties to submit to it, on or before July 23, 2009, such material as will permit the Court to fulfill the gatekeeping obligation imposed upon it by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). This order directed, *inter alia*, that, "on or before August 3, 2009, any challenge to a party's *Daubert* submission shall be served and filed and any reply shall be served and filed on or before August 10, 2009."

The defendants submitted a letter to the Court, on August 3, 2009, seeking assistance in resolving the timing of expert-witness depositions. The letter stated that all the defendants' trial witnesses were deposed during the week of July 13, 2009; however, the defendants requested the Court's assistance because: (1) on July 10, 2009, they served notices for the plaintiffs' proposed expert witnesses to be deposed on August 3, 4, and 6, 2009; (2) the plaintiffs responded that their counsel and/or proposed expert witnesses were unavailable for such depositions, until after August 10, 2009; and (3) the defendants asserted they would be unable to rebut timely the plaintiffs' expert-witness reports if expert-witness depositions were not conducted before August 10, 2009.

A telephonic pretrial conference was held with the parties, on August 3, 2009, to address the defendants' letter. During that conference, the Court explained that, deposing opinion testimony witnesses after August 10, 2009, would not fit within the temporal scheme set forth in the Court's June 22, 2009 order. When the Court was asked "is it the instruction that all of the expert depositions are to be completed by the 10th," the Court responded, "[i]f you need information to challenge something that has come to [the Court] in the *Daubert* submissions and you need to examine the expert, you would have to do that before the 10th, in order to submit whatever it is that you're going to submit to [the Court].... If you don't need to challenge any expert, ... or you don't need any deposition information to lodge any challenge or to reply to any challenge, then it doesn't matter."

Before the Court are: (a) the parties' *Daubert* submissions; (b) the plaintiffs' objection to the defendants' proposed expert witness,

Kevin Wilkie ("Wilkie"); and (c) the defendants' motion to preclude the plaintiffs' proposed expert witnesses: Dr. Andreas Spolidoro ("Spolidoro"), Roland Santos ("Santos"), and John Valpreada ("Valpreada").

The Court has reviewed the parties' respective *Daubert* submissions. Based on those submissions, the Court has determined that the plaintiffs seek to elicit opinion evidence, at the trial, from (1) Spolidoro, "concerning transport, storage and quality inspection of fresh fruit and vegetables"; (2) Santos, "concerning marine engineering and refrigeration, carriage of refrigerated cargo"; and (3) Valpreada, "concerning Banana Quality Control/Management." The defendants will seek to elicit opinion evidence from (a) Dr. Ann Snowdon ("Snowdon"), concerning plant pathology; and (2) Wilkie, concerning carriage of refrigerated cargo.

*Application to Preclude*

*A. Testimony of Wilkie*

The defendants propose to have Wilkie, a "first class engineer," deliver opinion testimony about the condition of Cloudy Bay's refrigerated cargo holds. The plaintiffs contend Wilkie's opinion testimony should be excluded from the trial of this action because: (1) Wilkie's reliance on his conversations with defense counsel concerning "confidential discussions with U.S. Magistrate Judge Pitman" and on a "written 'summary'" of settlement discussions," "will have tainted all of his opinions"; (2) all statements or opinions (a) "concerning the inherent nature, physiology and pathology of bananas," (b) relating to "causation of damage as a pre-shipment condition in the bananas," (c) discussing "the relevance, credibility and interpretation of Chiquita's documents concerning quality control and logistics," involve topics outside Wilkie's expertise; (3) "[a]ll statements and opinions based upon a Delivery Air Temperature Chart ("Honeywell chart")" are based on a "document [that] should have been produced as a Rule 26 Initial Disclosure," but was not; (4) Wilkie did not have the "entire file that he used in rendering opinions" when he was deposed, which prevented the plaintiffs from questioning him fully; and (5) Wilkie's "oral conversations with vessel crew" constitute hearsay, "as he took no contemporaneous notes, there were no vessel records produced to substantiate vessel actions or non-actions, and vessel personnel were not produced for deposition despite proper notice." The defendants oppose the plaintiffs' challenges to Wilkie's contemplated opinion testimony because: (1) the plaintiffs failed to provide any legal authority supporting their challenges; and (2) the plaintiffs have relied on factual allegations unsupported by the record. In addition, the defendants assert that Wilkie is qualified to give opinion testimony "on reefer ships and the carriage of refrigerated cargo."

Fed.R.Evid. 702 provides the following:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In *Daubert,* the Supreme Court explained that a federal trial court has a gatekeeping responsibility when opinion evidence is sought to be presented to a jury. The court must ensure that the testimony to be presented is based upon methods and procedures that are reliable; that is, based on "more than subjective belief or unsupported speculation." *Daubert,* 509 U.S. at 590, 113 S.Ct. at 2795. In determining whether opinion evidence should be received at a trial, a court must focus on the principles and methodologies employed by the witness(es) who will offer opinion testimony, instead of the conclusions that those principles and methodologies employed generate. *See id.,* 509 U.S. at 595, 113 S.Ct. at 2797.

The defendants submitted a "revised expert disclosure," by Wilkie, for the Court's review, in connection with: (1) their desire to elicit opinion evidence from Wilkie at the trial; and (2) the judicial gatekeeping obligation noted above. The defendants' submission contains the information listed in Fed.

R.Civ.P. 26(a)(2)(B), as it provides information concerning: (1) Wilkie's qualifications, career history and professional experience; (2) his examination of the vessel's cooler units and air delivery systems; and (3) the methods he employed in performing various tests, including: (i) a "normal air change calculation for [the cooler] space"; (ii) a "flow distribution check around the entire deck area within the cargo space"; and (iii) a measurement of the "total number of air changes per hour in [a particular] deck." Wilkie explains, through the defendants' submission, the results of his tests, and the conclusions he reached, based upon his examination of the vessel and the assessments he performed. Wilkie examined the accuracy of the "vessel's delivery air probes," and described the test performed by the plaintiffs' expert, Dr. Spolidoro, and what Wilkie characterizes as "fundamental failings" in the methods used by Dr. Spolidoro. Wilkie described the physical condition of the vessel's deck units and air delivery systems, and he challenged Dr. Spolidoro's assessment methods and, the conclusions he reached respecting the condition of the vessel's cargo space delivery air probes and the air flow through the cargo space. The defendants' submission notes that Wilkie has not published anything in the last ten years, identifies actions in which he has testified, during the previous four years, and specifies the compensation he is to be paid for his study and testimony in this case.

■ The plaintiffs allege Wilkie's opinions are tainted—because of his discussions or involvement in the preparation, or occurrence, of settlement proceedings. This allegation is conclusory, as the plaintiffs have provided neither supporting facts, nor an explanation of the circumstances pertinent to, or the basis for, this allegation. The Court's review of the defendants' expert disclosure materials, relating to Wilkie, reveals no apparent "taint"; therefore, the Court finds that the plaintiffs' challenge to the propriety of the defendants eliciting opinion testimony, from Wilkie, is baseless.

Furthermore, the plaintiffs' request, that Wilkie be precluded from testifying about certain matters that are "outside of his field of expertise," is devoid of any citation to, or description of, a portion(s) of Wilkie's expert disclosure materials that demonstrates Wilkie plans to proffer opinions on such matters. The Court has reviewed Wilkie's report and finds that it does not include his opinions about the "nature, physiology and pathology of bananas," as the defendants allege, but, rather, states in his "conclusions" that "Dr. Snowdon will also [in addition to Dr. Spolidoro] be commenting on any physiological defects with the fruit."

Wilkie's opinions and conclusions relating to "causation" are based upon his study of the condition of the vessel's cooler units and air delivery systems, and his analysis of the functionality of the vessel's cooling systems to determine whether they caused elevated temperatures to occur in particular hold units. These causation opinions relate to matters within Wilkie's field of expertise, and are based on data he examined, collected, and tested.

The plaintiffs object to Wilkie proffering an opinion on the relevance, credibility, and interpretation of Chiquita's documents. However, the plaintiffs do not make citation to any specific opinions expressed by Wilkie to which they take exception. Moreover, the Court's review of the opinions and conclusions reached by Wilkie does not indicate he has taken any position on the relevance of Chiquita's documents. Therefore, it is not clear to the Court, that Wilkie made improper credibility assessments or interpretations of the data in performing his analysis. To the extent Wilkie opines that the Chiquita documents reveal "discrepancies" respecting the time certain cargo was "connected" to a power source, for preloading cooling, it is not clear, from the record before the Court, on what basis such opinion testimony should be excluded from the trial record.

The plaintiffs maintain that Wilkie did not have his "entire file" with him during his deposition; and, as a consequence, they were "unable to question him fully in all respects." However, the plaintiffs do not provide factual details supporting this claim. For example, the plaintiffs have not identified specific matters or topics raised during Wilkie's deposition, which he was unable to address "fully."

322

In addition, the plaintiffs did not provide the relevant portion(s) of Wilkie's deposition transcript that demonstrates their ability to examine Wilkie was impeded, owing to the absence of his complete file. *See* Local Civil Rule 5.1. Thus, it is not possible for the Court to analyze this objection appropriately and determine whether it should be sustained and a remedy fashioned.

Similarly, the plaintiffs did not provide a description of, and have not made citation to, the statements they characterize as "hearsay," because they are allegedly based upon Wilkie's conversations with "vessel crew." Nothing in Wilkie's expert disclosure materials identifies which opinion(s), if any, was formed based on Wilkie's conversations with "vessel crew," or if any such conversations ever occurred. Without more from the plaintiffs, the bona fides of their objection cannot be determined by the Court.

The plaintiffs also object to all "statements and opinions [by Wilkie based] upon a Delivery Air Temperature Chart," because the "[p]laintiffs do not have this document [and cannot] confirm ever receiving it"; additionally, the "[p]laintiffs' experts [have not] . . . had the opportunity to see or interpret the document nor render any opinion about it." In response to these allegations, the defendants make citation to a specific finding in Dr. Spolidoro's report, made after he examined the "relevant monitoring system" and discovered "no particular rise up in return air temperature results." The defendants assert the finding made by Dr. Spolidoro demonstrates that he possessed the Delivery Air Temperature Chart at issue, since "[t]he only monitoring system in the engine room of the reefer plant is the delivery air temperature charts." The defendants also contend that Santos reviewed the temperature chart, as evidenced by the "very specific comments" about it appearing in Santos' "supplemental expert report." Furthermore, according to the defendants, during a "break" taken at Wilkie's deposition, the plaintiffs indicated they did not have the Delivery Air Temperature Chart, and the defendants explained that the chart was available on a compact disc that was delivered to the plaintiffs "weeks before the deposition." Thereafter,

on July 17, 2009, the defendants provided another copy of the compact disc to the plaintiffs. The plaintiffs have not responded to the defendants' contentions that (a) the plaintiffs received the temperature chart, and (b) the reports of the plaintiffs' experts make reference to this chart. Based upon the defendants' detailed and uncontroverted explanation, rebutting the plaintiffs' contention that they did not receive the temperature chart at issue, the Court finds that the plaintiffs' objection to Wilkie's statements and opinions relating to the Delivery Air Temperature Chart, cannot be sustained. Therefore, the Court concludes the plaintiffs' objections do not warrant limiting or excluding any portion of the opinion testimony the defendants will seek to offer through Wilkie at the trial of this action.

A court must be secure in the belief that an opinion witness' conclusions and opinions have a reliable foundation or rest on good grounds before authorizing that witness to testify at a trial. *See Campbell v. Metropolitan Property and Cas. Ins.*, 239 F.3d 179, 184–85 (2d Cir.2001). In keeping with its gatekeeping responsibilities, the Court has considered the various factors noted in Fed. R.Evid. 702 that should be weighed by a court in determining whether a witness may be permitted to give opinion testimony at a trial. Based upon an analysis of those factors, and the written submissions made by the parties, the Court finds that, in forming the opinions and reaching the conclusions the defendants want Wilkie to impart at the trial, Wilkie has drawn upon his professional experience, personal observation of the vessel, and his review of the materials the parties exchanged during the pretrial discovery phase of the litigation. Drawing upon one's professional experience and a hands-on investigation, are reliable methodologies through which to develop opinions and reach conclusions about scientific, technical, or other areas of specialized knowledge. Having employed these methodologies, Wilkie may give opinion evidence at the trial concerning the "condition of the vessel's cargo holds," as determined by his investigation of the vessel to ascertain the "possible cause(s) of damage to [the] cargo of bananas." *See McCullock v.*

*H.B. Fuller Co.,* 61 F.3d 1038, 1043 (2d Cir. 1995).

*Application to Preclude*

**B. Testimony of Santos, Valpreda, and Spolidoro for Failure to Produce these Experts at Noticed Depositions**

 Rule 37 of the Federal Rules of Civil Procedure provides that, if a party fails to obey a discovery order, a court may make such orders in regard to the failure as are just, including dismissing the action or "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed.R.Civ.P. 37(b). "Even in the absence of a discovery order, a court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs." *Residential Funding Corp. v. DeGeorge Financial Corp.,* 306 F.3d 99, 106–07 (2d Cir.2002). "Several factors ... useful in evaluating" whether to impose sanctions under Rule 37 include " '(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of ... noncompliance.' " *Agiwal v. Mid Island Mortgage Corp.,* 555 F.3d 298, 302–03 (2d Cir.2009) (quoting *Nieves v. City of New York,* 208 F.R.D. 531, 535 [S.D.N.Y.2002] ).

 The defendants seek an order from the Court barring the trial testimony of the plaintiffs' proposed expert witnesses because, after the defendants served the plaintiffs with notices for these witnesses to appear and be deposed in early August 2009, the plaintiffs advised the defendants that their witnesses and/or counsel were unavailable to attend depositions on the proposed dates. The plaintiffs advised the defendants that Santos was available to be deposed on September 9, 2009, Spolidoro was available to be deposed during the week immediately preceding the commencement of the October trial of this action, and Valpreda was available to be deposed after August 20, 2009. The defendants assert they have been prejudiced by the plaintiffs' refusal to facilitate "discovery depositions" for their proposed expert witnesses prior to August 10, 2009, when *Daubert*-related submissions had to be made to the Court. According to the defendants, this has frustrated their ability "to depose these witnesses properly and timely rebut their reports."

The record makes clear that all parties were aware of the August 10, 2009 deadline for submitting *Daubert*-related materials, fixed by the Court's June 22, 2009 order. On July 10, 2009, the plaintiffs received notices from the defendants of their desire to depose the plaintiffs' proposed expert witnesses. These notices indicated the defendants had determined to conduct depositions on dates between August 3 and 6, 2009. However, despite receiving the notices and knowing of the court-ordered deadline for submitting *Daubert*-related materials, the plaintiffs made neither their counsel nor their proposed expert witnesses available, to participate in the depositions, prior to the August 10, 2009 deadline. Instead, the plaintiffs proposed: (1) holding one deposition on or after August 20, 2009, a point in time at least 10 days after *Daubert*-related submissions were owed to the Court; (2) holding another deposition on September 9, 2009, approximately one month after the *Daubert*-related submission deadline; and (3) holding the last of the three depositions during the week immediately preceding the week encompassing October 14, 2009, the date on which the trial of this action is scheduled to commence-a week that is almost two months after the deadline for *Daubert*-related submissions to be made to the Court. The failure of the plaintiffs to permit the defendants to examine orally and timely, their proposed expert witnesses compromises the defendants' ability to challenge trial testimony expected to be given by those witnesses and hampers severely the defendants' ability to defend against the plaintiffs' allegations.

Fed.R.Civ.P. 37 provides notice to the plaintiffs that their failure to produce their proposed expert witnesses, within the deadlines provided by the Court, could result in a sanction, including the one proposed by the defendants. *See Agiwal,* 555 F.3d at 302–03 (quoting *Nieves,* 208 F.R.D. at 535).

Additionally, the plaintiffs' objection to Wilkie being used as an expert witness by the defendants shows their awareness that a party's inability to conduct a "complete" deposition of an adversary's proposed expert witness(es) could result in that witness being barred from offering trial testimony, since, the plaintiffs requested that the Court preclude Wilkie from testifying at the trial, because he did not have his complete file at his deposition, which inhibited the plaintiffs' ability to examine him "fully."

In determining whether to grant the defendants' request, for an order barring the plaintiffs from offering opinion testimony at the trial of this action, because the plaintiffs failed to produce their proposed expert witnesses for depositions timely, the Court has considered the factors pertinent to imposing sanctions pursuant to Fed.R.Civ.P. 37. *See Agiwal*, 555 F.3d at 302–03. Having done so, the Court finds that, in the circumstance of the case at bar, granting the defendants' preclusion request is reasonable and appropriate. *See e.g., Chamblee v. Harris & Harris, Inc.*, 154 F.Supp.2d 670, 679 (S.D.N.Y. 2001) (finding that, because the plaintiff failed to produce two witnesses "on the date of their depositions, defendants' opportunity to defend the alleged testimony of these witnesses has been greatly prejudiced," and, as a result, the defendants' motion to exclude the testimony of such witnesses was granted); *see also Residential Funding*, 306 F.3d at 106–07; Fed.R.Civ.P. 37(b).

The Court is mindful of the plaintiffs' contention, that the Court lacks authority to consider the defendants' Rule 37 sanctions motion; however, the Court disagrees. Pursuant to Local Civil Rule 37.2 of this court, "[n]o motion under Rule[ ] . . . 37 . . . of the Federal Rules of Civil Procedure shall be heard unless counsel for the moving party has first requested an informal conference with the court and such request has either been denied or the discovery dispute has not been resolved as a consequence of such a conference." In their August 3, 2009 letter to the Court, the defendants requested a "[c]onference to be held today because a deposition is scheduled for Tuesday, August 4, 2009 for which there exists a dispute be-

tween the parties." The Court held a telephonic conference with the parties, on August 3, 2009, at which the defendants raised the issue of the plaintiffs' resistance to producing their proposed expert witnesses for noticed depositions prior to August 10, 2009. At that time, the Court made clear that examinations of expert witnesses would have to occur before August 10, 2009, in order to be in compliance with the deadline for *Daubert*-related submissions set forth in the Court's June 22, 2009 order. Therefore, an "informal conference with the court" was held, and the instant motion by the defendants' is made properly, as the requirements of Local Civil Rule 37.2 have been satisfied.

*Application Respecting Dr. Ann Snowdon*

The defendants submitted materials, for the Court's review, in connection with: (1) the defendants' desire to elicit opinion testimony from Dr. Snowdon at the trial; and (2) the judicial gatekeeping obligation noted above. The plaintiffs have not lodged a challenge to Dr. Snowdon's proposed opinion testimony. The Court has reviewed the preliminary report, report, and supplemental report by Dr. Snowdon, as well as her curriculum vitae and the data required to be disclosed by her, pursuant to Fed.R.Civ.P. 26(a) (2)(B). The Court finds that utilizing one's education and relying on practical experience are reliable methodologies through which to develop opinions and reach conclusions about scientific, technical, or other areas of specialized knowledge. *See* Fed.R.Evid. 702. The Court finds further that Dr. Snowdon, who has employed these methodologies, is qualified to give opinion testimony, at the trial, on plant pathology, based upon her education as a plant pathologist, her experience surveying cargoes of fruits and vegetables and her review of information generated and exchanged by the parties, during the pretrial discovery phase of the litigation. Therefore, Dr. Snowdon will be permitted to give opinion testimony at the trial. *See McCullock*, 61 F.3d at 1043.

## CONCLUSION

For the reasons set forth above, the defendants' motion to preclude trial testimony from the plaintiffs' proposed expert wit-

nesses, Dkt. Entry No. 24, is granted, and the plaintiffs' objection to the defendants eliciting opinion testimony from Wilkie, during the upcoming trial, Dkt. Entry No. 23, is overruled; he may provide opinion testimony at the trial of this action.

SO ORDERED: